Argued September 14, affirmed October 5, rehearing denied November 9, 1915.

## HANSEL *v.* NORBLAD.

(151 Pac. 962.)

**Cancellation of Instruments—Actions—Averments of Fraud.**

1. In a suit to set aside conveyances as procured by fraud and undue influence, the facts showing the fraud must be alleged, and bare averments that the transaction was carried out fraudulently, willfully and by false pretenses is not enough.

[As to cancellation of instruments for forgery, see note in 92 Am. St. Rep. 272.]

**Deeds—Evidence—Sufficiency.**

2. In a suit to set aside conveyances, evidence *held* insufficient to show that at the time of the conveyance the grantor was incompetent.

[As to contracts between attorney and client, see note in **83 Am. St. Rep. 158.**]

**Attorney and Client—Transactions—Validity.**

3. In view of Section 561, L. O. L., declaring that the measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties, an agreement as to compensation between attorneys and one who desired to retain them, made before the relation of attorney and client existed, cannot be repudiated because of the subsequent confidential relation.

**Attorney and Client—Agreements—Validity.**

4. After the relation of attorney and client is established, an agreement between the attorney and his client is binding, if the client knows all the facts and is fully advised as to the situation.

**Attorney and Client—Agreements—Compensation.**

5. An agreement by one accused of murder to pay each of the two attorneys retained to represent him $1,000 does not show that the fee is so excessive as to impute fraud to the attorneys.

**Attorney and Client—Compensation—Agreements—Validity.**

6. In a suit to set aside conveyances made to secure counsel their fees in defending a murderer, in view of Section 2385, L. O. L., which made the costs recoverable by the state a prior lien, evidence of the value of the property and the liens on it *held* not to show that the instruments were procured by fraud.

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is a suit originally brought by Oswald C. Hansel, for whom was substituted Paul Hansel, styling himself trustee, to set aside a mortgage made to the defendant A. W. Norblad and a deed to C. W. Mullins covering real estate in Clatsop County, as well as a bill of sale to both of them of personal property belonging to Oswald C. Hansel. The realty is alleged to be of the value of $8,000, subject to a mortgage for $1,000 and a judgment for $1,841. After alleging that the defendants A. W. Norblad and C. W. Mullins were and are practicing attorneys at law, the complaint contains these allegations:

"That on the fourteenth day of September, 1913, said Oswald C. Hansel was committed to the county jail of Clatsop County, Oregon, on the charge of murder in the first degree, and that during all the time of his incarceration, and particularly the first few days following the commission of the crime with which he was charged, he was in a state of mental collapse and general nervous breakdown, as a result of the gradual realization of the heinousness of the offense committed while laboring, as this plaintiff believes, under a hallucination growing out of the domestic difficulties heretofore related, and his perturbed mental condition arising therefrom, and that while in said state of mental collapse and general breakdown, and while the said Oswald C. Hansel was mentally irresponsible and unable to comprehend what he was doing, or to resist an attempt at undue influence, the defendants A. W. Norblad and C. W. Mullins, well knowing the condition of the said Oswald C. Hansel, under the pretext of entering upon a defense of the said Oswald C. Hansel for the crime with which he was charged, in truth and in fact entered, instead, into a conspiracy to obtain ownership and possession, fraudulently and willfully, of the said property of the said Oswald C. Hansel, and that on the nineteenth day of September, 1913, at the county jail of said Clatsop County, the said defendants, in pursuance of said conspiracy, fraudulently, willfully, by false pretenses, and by exercising an undue influence over the said Oswald C. Hansel while in the mental and nervous state above related, prevailed upon the plaintiff to execute, under the pretext of defending him, but as a matter of fact without consideration, a mortgage for $1,000 upon the property of the said Oswald C. Hansel aforesaid in favor of defendant A. W. Norblad, which said mortgage is recorded in Book 35 of Mortgages at page 319, Mortgage Records of Clatsop County, Oregon.

"That the defendants claim that on the twenty-third day of September, 1913, three days following the execution of mortgage aforesaid, the said Oswald C. Hansel executed a warranty deed to defendant C. W.

Mullins conveying the aforesaid property of the said Oswald C. Hansel to said C. W. Mullins, which alleged deed is recorded in volume 81 of Deeds at page 384, Deed Records of said Clatsop County, Oregon. It is alleged that no such deed was ever executed by him with his knowledge, and that if by any possibility it was executed by him, it was while in the aforesaid state of mental collapse and nervous breakdown, and was obtained fraudulently, willfully and by the exercise of undue influence over a mentally irresponsible person, and was furthermore without any consideration whatsoever.''

A similar averment concerning the transfer of Hansel's personal property to Norblad and Mullins also appears in the complaint, but no further notice will be taken of the same, because in their answer the defendants disclaim any interest whatever in the personalty. The execution of the mortgage and deed are admitted, but all the imputations of fraud, undue influence and incapacity of the grantor in the execution of each instrument are traversed by the answer. The value of the realty is placed by the defendants at $5,000. They allege the details giving rise to the prior mortgage and judgment showing, as admitted by the reply, that the former was for $1,000, with interest thereon at 8 per cent per annum from March 21, 1913, and the latter was in favor of the former wife of Hansel for $1,800, with interest from August 30, 1913, which judgment was paid October 21, 1913, by the defendant A. W. Norblad, amounting at that date to $1,876. The answer also maintains, and it is not denied, that the State of Oregon, in the case of the state against Oswald C. Hansel, had recovered a judgment for $622.70, docketed September 30, 1913, which remains unpaid, together with taxes on the premises in the sum of $51.25. The defendants set out the particulars of the

execution and delivery of the mortgage to Norblad and the deed to Mullins, and aver, in substance, that the same were executed for a valuable consideration, in good faith, in payment for their services to be rendered in defending Hansel upon an indictment charging him with the crime of murder in the first degree. They state that the mortgage and deed were executed and obtained by them without any conspiracy, fraud or false pretense whatever, and while Hansel was in a perfectly rational and responsible mental condition, appreciating and knowing what he was doing. It is admitted that Mullins and wife afterward conveyed the land to Norblad. The reply traversed the affirmative matter of the answer in important particulars not necessary to be detailed.

It appears that Hansel was convicted of the crime charged against him, and was executed under the law then providing for capital punishment. Prior to his execution he gave his deposition in this cause, and the same was suppressed by order of the Circuit Court for certain irregularities respecting its custody after it had been taken. The court heard the other testimony and rendered a decree to the effect that the complaint should be dismissed and the defendant Norblad declared to be the owner in fee simple of the premises as against the present plaintiff. The plaintiff appealed.     AFFIRMED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. George Arthur Brown.*

For respondents there was a brief over the names of *Mr. Frank C. Heese, Mr. A. W. Norblad* and *Mr. C. W. Mullins,* with an oral argument by *Mr. Heese.*

Mr. Justice Burnett delivered the opinion of the court.

Some question was made at the argument by the defendants here about the sufficiency of the complaint respecting the plaintiff's right to maintain this suit, and they also urged that the deposition of Hansel was rightfully suppressed. We ignore these contentions without deciding them, and treat the case as though the plaintiff here had the right to continue the prosecution of this suit as the successor in interest of the original plaintiff, Oswald C. Hansel. We also assume that the deposition was regularly taken and transmitted to the Circuit Court, and have carefully read the same as part of the evidence in the case.

1. The defendants contend also that the complaint does not state facts sufficient to constitute a cause of suit. As to the capacity of Hansel to make a contract the allegation possibly might stand in the absence of any demurrer or motion to make the same more definite. No false pretense or any act of fraud is alleged, and in respect to the averment concerning conspiracy, undue influence, and the use of a pretext of defending Hansel the complaint does not state more than mere conclusions of law, and does not set forth any fact necessary to serve as a basis for relief. It is not alleged in any way that the defendants did not carry out their agreement to defend Hansel, and they are not charged with having made any untrue statement or promise whatever. As stated in *Leavengood* v. *McGee,* 50 Or. 233, 239 (91 Pac. 453, 456):

"The rule is that the facts upon which fraud is predicated must be specifically pleaded. A mere general averment of fraud is nothing but the averment of a conclusion, and will not suffice. It presents no issue for trial, and is bad on demurrer. Such an averment

not only renders the bill or complaint demurrable, but it will not even sustain a decree'': 20 Cyc. 734; *Leasure* v. *Forquer,* 27 Or. 334 (41 Pac. 665).

Adverbs are not allegations, and to say that a transaction was carried out ''fraudulently, willfully, by false pretenses'' is not sufficient unless the false pretenses are set out and the acts or representations constituting the fraud are clearly stated. So far as the matter is affected by the relation of attorney and client, the statement in the complaint utterly fails to show that the relation existed at the time the transaction took place or that it influenced the plaintiff's predecessor in the least. The complaint is insufficient as far as a charge of fraud or undue influence is concerned.

2. A careful reading of the testimony fails to disclose any showing whatever that at the time of the execution of the papers in question Hansel was insane. On the other hand, it clearly appears from the evidence that he fully comprehended the nature and quality of the act involved, and that he executed the instruments well knowing the purpose for which they were made and the purport of the same. It is in the record that after he was arrested for murder he first sent for the defendant Mullins and employed him in his defense. Mullins testified to the effect that he attended at the jail where Hansel was confined, and they agreed that the fee for defending him should be $1,000. Nothing appears to have been said at the time about securing payment of this compensation. Mullins went from Astoria to Portland for the purpose of engaging other counsel to assist. He says this was done at the instance of Hansel, but the latter denies it, contending that Mullins did so on his own motion. During the absence of Mullins, Hansel requested a friend to get

the defendant Norblad to visit him, whom he also engaged in his defense, promising to give him $1,000. Concerning the amount stipulated as compensation for Norblad and Mullins, Hansel, does not contradict them in his deposition. The only evidence on the subject of the sums settled upon as attorney's fees is the deposition of Hansel and the testimony of Norblad and Mullins. They do not differ on that point. As to the fee of Norblad, he is corroborated by the testimony of Mr. Kaboth, a friend of Hansel, with whom the latter consulted in regard to the terms and nature of the mortgage. The documents were thoroughly explained to Hansel by Kaboth both in German and in English, and it was after thus counseling with the latter that Hansel executed the security to Norblad. The execution of the note and mortgage is substantially admitted by Hansel in his deposition. As to this latter instrument, the only contention which Hansel made is that Norblad was to take the mortgage for $1,000 and pay both himself and Mullins. The fact, however, is undisputed that after Mullins and Norblad had stated to Hansel the amount of their fees, and, as they say, and he does not deny, he agreed to them, Norblad prepared a note and mortgage for $2,000 running to him and Mullins, and, in the absence of the latter, took the same to the jail to be executed, when Hansel demurred to the amount. After Hansel had consulted with his friend Kaboth, Norblad, seeking to secure his own fee, erased Mullin's name and the amount of $2,000, and inserted as the principal of the note and mortgage the sum of $1,000, leaving the instruments as security for that amount running to Norblad alone. In this form Hansel executed and delivered them to Norblad. Under these circumstances we conclude that the note and mortgage involved con-

tained the true agreement of the parties at the time; for, if Norblad was to have paid the fee to Mullins, the only objection naturally to be charged by Hansel against the instrument as first proposed would have been the amount, and the name of Mullins would have been left intact.

As to the deed subsequently made in favor of Mullins, Hansel utterly denies the execution thereof, but we have the testimony of Mullins himself, of Norblad, and of Jeffries, a totally disinterested witness, all declaring that Hansel read the deed and executed the same understandingly and in full acquaintance with its terms. These witnesses give details and circumstances of the transaction opposed to which is the mere flat denial of Hansel. The weight of the testimony preponderates greatly in favor of the defendants on the issue of the actual execution of the deed.

3–6. The principal question which we have to determine is that charged by the plaintiff to the effect that these were transactions between attorney and client, and that the burden is upon the defendants to show the utmost good faith on their part toward their client. It is declared in Section 561, L. O. L., that:

"The measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties."

It thus appears that under our statute the matter of inaugurating the relation of attorney and client is a legitimate subject of contract. In point of law it does not differ from any other matter about which parties may agree. Without dispute in the instant case the relation was sought by the plaintiff's predecessor in interest on his own motion. It was at his instance that the defendant attorneys attended upon him, and

they began at arm's-length their negotiations about the compensation to be awarded them. In the inception of the transaction all parties broached the subject of establishing the relationship of client and attorney like participants in any other business affair. Hansel was at liberty to employ them or not, as he chose. Even his deposition does not impute to them any persuasion, overreaching, or anything of that sort. It cannot be said in reason that because a man is an attorney he is under any disability whatever in making a contract with one who seeks to become his client. As stated in 3 Am. & Eng. Ency. Law, p. 334:

"An attorney is under no actual incapacity, however, to deal with or purchase from his client; all that can be required is that there shall be no abuse of the confidence reposed in him, no imposition or undue influence practiced, nor any unconscionable advantage taken by him of his client. As has been stated, in a transaction of this character the burden is upon the attorney to show its perfect fairness; but if the court is satisfied that the party sustaining the relation of the client performed the act or entered into the transaction voluntarily, deliberately, and advisedly, knowing its nature and effect, and that no concealment or undue means were used to secure his consent to what was done, the transaction will be upheld. * * To entitle the client to relief from a contract or agreement entered into with his attorney, it must be shown that the client has suffered some injury through an abuse of confidence on the part of his attorney. To show merely that the relation of client and attorney existed, and that during the subsistence of the relation the parties entered into a contract, without showing that the client was induced thereto by an abuse of confidence by the attorney, is not enough."

In other words, it would not be sufficient for a plaintiff to say:

"I made a contract with a man who was an attorney at the time. I demand that it be set aside."

The relation of attorney and client begins when the contract of employment is consummated: 3 Am. & Eng. Ency. Law (2 ed.), 316. Our statute makes the compensation of the attorney a proper subject of contract. The parties approach the subject matter from opposite sides, and deal in the contract of employment on equal terms like participants in any other lawful business. The plaintiff would overturn the agreement thus made merely because one of the contracting parties happens to be a practicing lawyer. Such a contention has no foundation in either law or reason. This, however, is the substance of the complaint in this suit as far as the making of the contract of employment is concerned, and is the purport of the argument for the plaintiff. The authorities cited by the plaintiff all relate to transactions occurring after the relation had been established and the confidence attendant upon the same had accrued. The reason of the rule does not apply to the precedent transaction of parties looking to the employment of an attorney. We fully concur in all the cited precedents say about the good faith required of attorneys in their dealings with clients; but especially in the preliminary bargain the rule goes no further than to ascertain if the parties are free and competent to contract and are not laboring under any impediment caused by fraud, undue influence or abuse of confidence. Even after the confidential relation is established the authorities agree that, if all the facts were known to the client, and he was fully advised of the situation, if no attempt was made to mislead or deceive him to his hurt, and if he knowingly and understandingly entered into the agreement, it is as binding

upon attorney and client as it is upon any other individuals competent to contract. In the instant case Hansel knew every circumstance affecting the transaction. He knew the nature and amount of his property. He himself had made the situation in which he found himself. He took the initiative in the employment of the attorneys by sending for them. He does not dispute that each was to charge him $1,000. The property was his, and he had a right to dispose of it as he saw fit. No attempt whatever is made to show that he was insane or unable to comprehend the nature, quality and consequences of the business in which he was engaged. He was clearly a competent contracting party, and knew and understood the transaction and all the circumstances surrounding it as well as any other person concerned. Under such conditions the court cannot make a contract for him. He freely stipulated as stated, or he did not. The great preponderance of the testimony is that he did contract for the amount of fees claimed by the defendants. In the face of his denial of the execution of the deed we have the testimony of at least one disinterested witness to the effect that Hansel admitted the execution thereof after having read it and signed it. The subscribed name as it appears upon the original deed in evidence compares with the admitted signature of Hansel to the mortgage, which is also in evidence, as well as with his signature to his deposition, to which we have given full consideration. There is no reasonable question but that Hansel did execute the deed.

The burden of the complaint made in argument by the counsel for the plaintiff is that the property first mortgaged and afterward conveyed was disproportionately greater in value than the reasonable worth of the

services of the defendants in the defense of Hansel. The amount to be paid for the services was fixed by the original contract for the same at the inception of the transaction, and was not a matter referable to the confidential relation existing between attorney and client after the same was established. Being free to contract or not on the matter of fee to be charged, Hansel stood in no different relation to the defendants than he would have with any other party; and, moreover, we are not prepared to say from the testimony that the fee charged for defending a man for murder in the first degree is so excessive as to impute fraud to the attorneys. The defendant attorneys are criticised by some of the plaintiff's witnesses for not securing a change of venue in the murder case, but the testimony is undisputed that Hansel insisted on being tried in Clatsop County, and it was only at the last moment before the trial began that he consented that the effort be made to effect the change. The record of that case is before us in evidence containing affidavits tending to show public prejudice against Hansel, and discloses that the court denied his counsel a respite of only a half an hour in which to complete their showing for a change of venue. For all that appears in the record, all was done for him that could have been done by anyone at the trial.

The testimony about the value of the property involved, as usual in such cases varies greatly. It consisted of about 100 acres of land near Warrenton, in Clatsop County. Its value, as estimated by witnesses, ranges all the way from $4,000 to $10,000. Admittedly it was encumbered by a mortgage of $1,000 and a judgment paid at $1,876. Besides this, there was the prospect of the state acquiring a lien upon the same in a then unknown sum for the costs and disbursements

attending the prosecution of the defendant in the criminal action. As the event proved, this amounted to $622.70, and, according to Section 2385, L. O. L., this was a lien upon the property from the time of the commission of the offense antedating both the deed and the mortgage here in question. Counting interest, the total liens upon the place amounted to $3,500, in round numbers. Estimating the equity of redemption at $2,000, the amount which Hansel agreed to pay his attorneys, would make the value of the property $5,000. Taking the wide divergence of the testimony into consideration, this is not so disproportionate as to constitute fraud. In *Sherman* v. *Glick,* 71 Or. 451 (142 Pac. 606), this excerpt from 2 Pomeroy's Equity, section 922, is quoted with approval:

"If there is nothing but mere inadequacy of price, the case must be extreme in order to call for the interposition of equity. When the inadequacy does not thus stand alone, but is accompanied with other inequitable incidents, the relief is much more readily granted. But even here the courts have established clearly marked limitations upon the exercise of their remedial functions, which should be carefully observed. The fact that a conveyance or other transaction was made without professional advice or consultation with friends, and was improvident, even coupled with an inadequacy of price, is not a sufficient ground for relief, provided the parties are both able to judge and act independently and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstances of oppression."

In its aspect as a charge of fraud the complaint is utterly insufficient. The testimony does not in any sense show a mental condition of Hansel disqualifying him from entering into any contract he chose to make.

The amount of the fees was fixed while the parties were at arm's-length as a prelude to the employment of defendants. In that feature the transaction is not affected by the confidential relation of attorney and client. More than that, the testimony does not show that the defendants used any fraud, duress or misrepresentation in contracting with Hansel, and the evidence is clear that he knew all about the transaction and its effects. He chaffered and dickered with them over the matter as any other trader, but the same was finally settled as stated. It is written large throughout the testimony that he fully understood the situation in all its bearings. He had a right to convey his farm, and, in the absence of any overreaching, fraud or abuse of his confidence in the grantees, the transaction will stand as he left it. For want of any testimony showing disabling mental defect in Hansel, in the face of his utter denial of the execution of the deed to Mullins, and considering that the complaint is insufficient for that purpose, we are cut off from declaring the deed a mortgage and ordering its foreclosure. If its execution had been admitted with an allegation of an agreement that, although absolute in form, it was agreed upon by the parties that it should be a security merely, a different question might be presented, but no such record is before us.

The decree of the learned circuit judge, who heard and saw the witnesses, and who was conversant with all the incidents of the defense, is affirmed.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.