'Argued December 7, affirmed December 28, 1915.

# SALEM–FAIRFIELD TELEPHONE ASSN. v. McMAHAN.

### (153 Pac. 788.)

**Joint Adventures—Presumption as to Interest of Parties in Telephone Line.**

1. Where the evidence was conclusive that three persons constructed a certain telephone line as a joint venture, which act created, as between themselves, a fiduciary relation analogous to a partnership, it will be presumed, where there is no evidence to the contrary, that each had an undivided one-third interest.

**Corporations—Powers and Liabilities of Under Joint Ventures.**

2. In the absence of a statute, a corporation cannot agree to enter into a partnership with a person, firm or other corporation, but may, under a joint venture with others, transact any business within the scope of its legitimate powers, and by reason thereof become liable on account of the fiduciary relation thus assumed, which relation is subject to dissolution, accounting and settlement in a court of equity in the same manner as all other cases of partnership.

**Joint Adventures—Mutual Rights—Corporations.**

3. Where the interests of two or three persons owning a telephone line as a joint venture were absorbed and taken over by a corporation, but the third party retained his interest, *held* that the assignee of the party retaining his interest was entitled to an undivided one-third interest in the line, subject to the payment of his ratable share of the operating expenses of a three-party line.

[As to joint adventure as distinguished from partnership, see note in 115 Am. St. Rep. 407.]

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.   Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by the Salem-Fairfield Telephone Association, a corporation, against L. H. McMahan, in which defendant had a decree enjoining the adding of other customers to the line or from interfering therewith, and the plaintiff appeals. Affirmed and remanded for further proceedings.

AFFIRMED AND REMANDED.

For appellant there was a brief over the name of *Messrs. McNary, Smith & Shields,* with oral arguments by *Mr. John H. McNary* and *Mr. Roy F. Shields.*

For respondent there was a brief over the names of *Mr. Myron E. Pogue, Mr. L. H. McMahan* and *Mr. Woodson T. Slater,* with oral arguments by *Mr. Pogue* and *Mr. McMahan.*

Opinion by MR. CHIEF JUSTICE MOORE.

It appears from a transcript of the testimony that in the year 1898 a local telephone line was constructed northerly along a county road from Salem about ten miles by W. H. Egan and others. With their consent a branch line, known as telephone line No. 6, was built from their line northwesterly beside a public highway by A. M. La Follette, L. F. Townsend and Oliver Beers, who installed and used phones in their respective farmhouses. Several other telephone lines were also built in the same manner and connected with the line constructed by Egan and others. As the telephone poles began to decay and other repairs became necessary, a written agreement was signed March 16, 1908, by many persons using telephones on these lines, whereby they undertook to consolidate such lines into a system, to be controlled by an unincorporated society, called the Salem-Fairfield Telephone Association. This agreement, however, was not signed by either La Follette, Townsend or Beers. In order to put into effect the terms of the writing, some of the users of telephones on the several lines met, pursuant to notice, and elected seven members to constitute the board of trustees; La Follette being chosen to represent line No. 6. By-laws were adopted providing that capital stock in the association should consist of all

necessary appliances required to build, maintain, and operate a telephone system, and such stock should be divided into shares of $25 each; that no member should be entitled to own or control more than three shares, entitling him to one vote for each share at a stockholders' meeting. The trustees were authorized to levy equal annual assessments to meet the expenses of maintaining and operating lines, not exceeding $3.50 for each share, except in cases of emergency, when a majority of the stockholders were empowered to increase the assessment. Section 5 of Article VI of the by-laws was as follows:

"It is agreed by the undersigned stockholders that all the lines forming a part of this association shall be placed in first-class shape by June 1, 1908, at which time the same shall become the property of the association."

Section 9 of Article V provided that:

The board of trustees "shall have authority to expel and disconnect any member who shall violate any of the rules of this association or these by-laws or who shall refuse or neglect promptly to pay any assessment or fine levied or assessed against him."

Oliver Beers and his wife on January 13, 1909, entered into a contract with the defendant, whereby they covenanted to sell and convey to him their farm. The defendant also paid Beers the sum of $25 for all his interest in telephone line No. 6. In conformity with the terms of the contract, the defendant immediately took possession of the premises, except such part thereof as had been leased, and began making extensive improvements. La Follette and Townsend were members of the unincorporated association, but neither Beers nor the defendant ever became a member thereof, though a share of its capital stock was

issued to Beers May 15, 1909, and after McMahan had become the purchaser of the land. At an annual meeting of the stockholders of the association a motion was regularly passed to the effect that a special meeting be called to discuss the propriety of incorporating the society, and the secretary was directed to give notice of such meeting. Pursuant thereto there was sent out a notice which reads:

"Salem, Or., June 9, 1910.

"Dear Sir: You are hereby notified that a meeting of the stockholders of the Salem-Fairfield Telephone Association will be held at the Clear Lake Schoolhouse Wednesday evening, June 15, 1910, at 8 o'clock, for the purpose of determining whether or not we shall incorporate under the laws of Oregon. You are earnestly requested to be present at this meeting.

"Yours truly,

"ALEX HAROLD, Sec."

The minutes of the meeting, held pursuant to that notice, in referring to the question of incorporating the association, reads:

"The vote being taken, it was carried unanimously."

Predicated upon that authorization the plaintiff was duly incorporated June 20, 1910. The corporation put up new poles and reconstructed line No. 6, and thereupon demanded payment of assessments from defendant, who refused to comply, for the reason that he was not a stockholder of the plaintiff, but chiefly because other phones had been added to the line which he asserts was exclusively built to accommodate only three families. McMahan, however, without recognizing the right to absorb his interest in line No. 6, made to the corporation some payments which he called contributions, and also offered another donation which the

plaintiff refused, and it caused the wire leading from his farmhouse to be cut, whereupon he connected the wire, thereby precipitating this suit, which resulted as hereinbefore stated.

1. The evidence conclusively shows that La Follette, Townsend and Beers constructed telephone line No. 6 as a joint venture, which undertaking constituted as between them a fiduciary relation analogous to a partnership, in which it must be presumed, in the absence of any evidence to the contrary, each had an equal interest: *Gius* v. *Coffinberry,* 39 Or. 414 (65 Pac. 358); *Eilers Music House* v. *Reine,* 65 Or. 598 (133 Pac. 788); *Campbell's Gas Burner Co.* v. *Hammer, post,* p. 612 (153 Pac. 475). When, therefore, Beers agreed in writing to sell his farm to the defendant, who pursuant to the express terms of the contract immediately took possession, the relation referred to was severed, and McMahan became the owner of an undivided one-third interest in telephone line No. 6. No assignment or transfer by La Follette or Townsend of their respective shares in that line appears to have been made either to the society or its successor the corporation. But, however this may be, it will be assumed, without attempting to decide a question which is not involved in this appeal, that their interests in telephone line No. 6 passed by estoppel to, and are now held and owned by, the plaintiff, and that, as a consideration therefor, La Follette and Townsend each received shares of the corporate stock.

2. We have no statute in this state permitting a corporation to enter into a partnership with a person, firm or other corporation, and, in the absence of an enactment on that subject, any agreement on the part of a corporation to enter into that relation must necessarily prove unavailing: 3 Thompson, Corp., § 2336.

A corporation, however, may under a joint venture with others transact any business that is within the scope of its legitimate powers, and thereby become liable on account of the fiduciary relation thus assumed: 3 Thompson, Corp., § 2337; 23 Cyc. 453; *Mestier* v. *Chevalier Paving Co.*, 108 La. 562 (32 South. 520). The relation referred to is usually created by express or implied agreement of the parties, but in the case at bar equity will look through the entire transaction, and, in order to promote justice, must take it for granted that a joint venture in maintaining and operating telephone line No. 6 was by operation of law created between the plaintiff and the defendant. The conclusion thus reached will make the fiduciary relation, existing by virtue of the joint venture, subject to dissolution, accounting and settlement in a court of equity in the same manner as all other cases of partnership.

3. The defendant is entitled to assert and hold an undivided one-third interest in and to telephone line No. 6, subject, however, to payment of his ratable share of the expense of operating a three-party line, to the same extent as that chargeable to and collected from La Follette and Townsend for their use of that line. This sum the defendant has ever been and now is ready and willing to pay.

It is impossible from the evidence before us to determine what compensation he should be required to make, in view of which the cause will be remanded, and, if an amicable adjustment cannot be reached, further evidence will be received, and based thereon a decree given for the reasonable sum so found to be due. The plaintiff will be enjoined from adding other patrons to the wire used in common by La Follette, Townsend and McMahan or their assigns. Nothing

here said is designed to prevent the plaintiff from putting up on line No. 6 more wires with which to supply the needs of other customers.

The cause will be remanded for such further proceedings as may be necessary, not inconsistent with this opinion.     AFFIRMED AND REMANDED.

MR. JUSTICE BENSON, MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.