Argued February 17, affirmed March 16, rehearing denied June 22, 1926.

PAGE–DRESSLER CO. *v.* H. F. MEADER ET AL.

(244 Pac. 308.)

Frauds, Statute of—Parol Contract of Partnership to Buy and Sell Land is not Within Statute or in Conflict With It.

1. A parol contract of partnership to purchase and sell real estate is not a contract for purchase or sale of land, or interest therein by one partner to the other, and is not within the statute of frauds or in conflict with it.

---

1. See 20 R. C. L. 812.

Corporations.

2. Corporations cannot lawfully enter into partnership with each other or with individuals.

Corporations—Rule That Corporation cannot Lawfully Enter into a Partnership cannot be Invoked by Profiting Partner to Escape Liability for Accounting for Other Partner's Share.

3. Where a partnership contract has been entered into between a corporation and an individual, and has been executed by either party, and profits realized by one of them through transaction of the firm's business, rule that corporations cannot enter into partnership with individuals cannot be invoked by profiting partner to escape liability to account for the other partner's share, especially where the transacted business was one in which the corporate partner was authorized to engage.

Corporations—Rule That Corporation cannot Lawfully Invest Funds in Business not Within Its Powers cannot be Invoked by Defendant Partner to Escape Accounting for Profits of Contract Fully Performed by Other Party.

4. Where contemplated partnership between plaintiff corporation and defendant to purchase and operate an apartment house until it was sold was partly within plaintiff's powers, rule that plaintiff was not permitted to invest corporate funds in a business not within its powers cannot stand in the way of defendant being compelled to account for profits from firm business after the contract was fully executed by the other party.

Corporations.

5. Corporations are not permitted to invest their funds for transaction of a business which is not within their powers.

Partnership.

6. Where complaint alleged a partnership, which answer denied, it was incumbent on plaintiff to establish a partnership.

Partnership—Partnership Agreement of Corporate Agent of Loan and Insurance Companies With Purchase of Apartment House Contemplating Procurement of Loan and Insurance in Excess of Purchase Price of Property by Concealing Agent's Interest in Venture Held Void.

7. Where plaintiff corporation contracted with defendant to borrow $5,000 in defendant's name, and only security therefor was a mortgage to be given on the apartment to be purchased by them, which was to cost $3,650, plaintiff's fraud in procuring loan and insurance without disclosing its interest in property *held* to show partnership contract illegal and unenforceable.

Equity—One Seeking Enforcement of Partnership Contract, the Consideration of Which is Fraudulent Transactions, Does not Come into Equity With Clean Hands.

8. Where, in suit for partnership accounting, fraudulent transactions of plaintiff in misrepresenting to loan company the value

2. See 20 R. C. L. 817.
8. See 10 R. C. L. 389.

of the property and concealment from it of fact that it was interested therein prevented enforcement of the partnership contract, since plaintiff did not come into equity with clean hands.

Contracts, 13 **C. J.**, p. 490, n. 85, p. 493, n. 18.
Corporations, 14A **C. J.**, p. 292, n. 7, p. 324, n. 1.
Equity, 21 **C. J.**, p. 180, n. 89, p. 184, n. 27.
Frauds, Statute of, 27 **C. J.**, p. 221, n. 15.
Joint Adventures, 33 **C. J.**, p. 862, n. 57.
Partnership, 30 **Cyc.**, p. 356, n. 40, p. 714, n. 21, p. 735, n. 69.

From Jackson: C. M. Thomas, Judge.

Department 1.

### Affirmed.   Rehearing Denied.

For appellant there was a brief over the name of *Messrs. Newbury & Newbury,* with an oral argument by *Mr. Gus Newbury.*

For respondents there was a brief over the name of *Messrs. Reames & Reames,* with an oral argument by *Mr. Charles W. Reames.*

RAND, J.—This is a suit for the dissolution of an alleged partnership, and for an accounting, and grows out of the following facts:

About September, 1919, one William Davis was the owner of an apartment house, and the premises on which it was located at Medford, Oregon, which he was anxious to sell for $3,650. In order to procure the sale of the property, he entered into negotiations with plaintiff Page-Dressler Company, a corporation, engaged in the real estate and insurance business at Medford, and offered to sell the same for said sum to said company, or to any purchaser found by it. The defendant, H. F. Meader, had but recently returned to Medford, and had consulted with Page-Dressler Company concerning his engaging in some business enterprise at Medford. Page-Dressler

Company called Meader's attention to this apartment house, and after some discussion between them, Meader not having the ready money to purchase the property outright, as required by Davis, proposed to Meader, that they should form a partnership to consist of Page-Dressler Company and Meader, for the purpose of purchasing and operating said apartment house, and informed him that it would obtain a loan of $5,000 upon said property from the Western Loan & Building Company of Salt Lake City, Utah, for whom it was, or shortly thereafter became, the agent, and out of the loan thus obtained, the partnership would pay said purchase price to Davis, and take the title to the property in the name of Meader, and use the balance of the loan in fitting up and furnishing said apartment house, and that Meader should manage the business for the partnership and execute his note and mortgage for the sum borrowed, giving the property purchased as security therefor. Meader assented to this proposal, and Page-Dressler Company procured a loan of said sum from the Western Loan & Building Company of Salt Lake City, Utah, and Davis conveyed the property to Meader, in consideration of $3,650, paid to him out of the amount thus borrowed, and the balance of the loan was used by Meader in furnishing said apartment house, and in paying back to Page-Dressler Company, certain advances amounting to $239.97, which that company had paid out in purchasing the property, and in obtaining the loan. These advances consisted of various items, among which were $50 paid to one D. M. Montieth, a representative of the Western Loan & Building Company, then in Medford; $10 paid directly to that company; $60.52, paid as a premium on an insurance policy for $5,000 upon said

building, issued by a company of which the Page-Dressler Company was the local agent, and taxes and other items not material to the questions involved here. In obtaining this loan for $5,000, upon property costing only $3,650, Page-Dressler Company wrote the Western Loan & Building Company, under date of September 6, 1919, among other things as follows: "This first loan is for $5,000, and is considered a number one security, both as to property, and the party applying for the loan, Mr. H. F. Meader, * * The appraisers, in going over this property stated to the writer, that the building could not be constructed today for $20,000. Of course the real market value from the sales standpoint, would not bring this amount of money." And on October 7, 1919, again wrote a letter, stating among other things, "we are sending you a copy of the deed in blank, and are also sending you the insurance policy covering for $5,000, in favor of your company." Immediately following the conveyance, Meader and his wife entered into possession of the premises and fitted out the same, and conducted it as an apartment house, and during said time, operated it wholly as his sole property, and expended considerable sums of money in making certain improvements thereon, and at the time of the commencement of the suit, had reduced the mortgage from $5,000, to about $3,500, using for said purposes funds derived from the business, and some of his own funds. Except the advances referred to, which were repaid out of the moneys borrowed, Page-Dressler Company paid nothing into the business whatsoever, and except for his living expenses, Meader withdrew nothing from the business; Page-Dressler Company received no commission from

Meader, nor from Davis for its services in the sale of the property from Davis to Meader. It has, however, at the expense of Meader, kept the property insured in companies represented by it, and received the premiums therefor, all of which policies show Meader to be the sole owner thereof. While conducting the business, Meader purchased two adjoining properties, using his own funds for that purpose. No account of the business transactions was kept, and no statements were ever rendered by Meader to Page-Dressler Company.

This suit was commenced on January 31, 1922. Shortly prior to the commencement of this suit, Meader sold and conveyed the apartment house and furnishings, and said two adjoining premises, to defendant C. E. Soderstrom, for the sum of $18,000. Upon learning from Meader that he was negotiating the sale of the property to Soderstrom, Page-Dressler Company wrote to Soderstrom, addressing the letter to Clancy, Montana, among other things, as follows: "At the request of Mr. H. F. Meader, the owner and operator of the Riverside Apartment House in Medford, we are writing you more in answer to your last letter to Mr. Meader. * * The writer is well acquainted with the business proposition, and as to the real value of the property. The following, is a fair value for the property, and we doubt very much, if the same could be replaced today, for anywhere near this money. The building, complete with plumbing, heating plant, gas piping and all electric wiring, could not be replaced for $16,000; the lot is reasonably worth $2,000, and the furnishings of the house, are worth at least $5,000. This makes a total valuation of $23,000." This portion of the letter, referred to the apartment house, and the lot upon which it was

erected, and has no reference to the other two prop-
erties sold by Meader to Soderstrom, the total con-
sideration for all of which was $18,000.  Meader sold
the three properties to Soderstrom, for $18,000, and
the purchase money was deposited in the Jackson
County Bank, one of the defendants, pending the
consummation of the sale.  An injunction order was
issued, restraining the defendant Meader, from with-
drawing from the bank, plaintiff's alleged portion of
the purchase price, and the bank, from paying out
the same.

Dr. Page and Mr. Dressler, the officers of Page-
Dressler Company, each testified that a contract of
partnership was actually entered into between Meader
and Page-Dressler Company; that the contract was
that the Page-Dressler Company was to assist in
having the property conveyed by Davis to Meader
in consideration of $3,650, to be paid Davis; that it
was to secure a loan for $5,000, giving the property
purchased as sole security; that the note and mort-
gage to be given to the loan company were to be
executed by Meader and his wife; that the property
was to be conveyed to Meader individually, and was
to be taken and held by him for the partnership;
that the business of conducting the apartment house
was to be carried on by Meader and in his name; that
Meader was to be paid by the partnership for his
services the sum of $100 per month, and that all
profits were to be divided equally between the corpo-
ration and Meader, and all losses borne equally by
them, and that Page-Dressler's connection with and
interest in the business was to be kept a secret.
These facts are all admitted by Meader, except the
actual consummation of the partnership agreement.
Meader testified that the understanding was as testi-

fied to by Page and Dressler, but that it was to be followed up by the making of a written contract, which he was at all times willing to enter into; that the amount of the loan was not sufficient for the transaction of the business, and that he went to the office of Page-Dressler Company on several occasions, and requested them to assist him in procuring money for the transaction of the business, but they told him to let the matter drift, and to stand off his creditors, which he refused to do. That after their refusal to advance money, he considered the contemplated partnership as abandoned, and that nothing was said by the Page-Dressler Company to him concerning the partnership, until after they learned that he was negotiating a sale to Soderstrom, for $18,000; that he never rendered them an accounting, and they never demanded an account of him. Page and Dressler both testified to having performed minor services for the partnership, such as recommending the apartment house and securing tenants for it; in obtaining reductions of insurance premiums; in taking up matters with the City Council, and obtaining for Meader, certain permits from the city, and in negotiating through Mrs. Dressler for the purchase of some rugs, and in giving Meader advice as to contemplated improvements, and the manner in which the business should be conducted. This latter testimony is either denied or explained by Meader, and as so explained has little, if any, bearing upon the question of whether there was a contract of partnership entered into between them. After hearing the testimony, the circuit judge found that the partnership was never consummated, and entered a decree dismissing the suit, from which an appeal was taken.

1. Defendant contends that the alleged partnership

contract was for the purchase and sale of real property, and not being in writing, was within the statute of frauds, and therefore void. This contention is foreclosed by the decision of this court, in *Flower* v. *Barnekoff,* 20 Or. 132, where it was in effect held that a valid contract of partnership for the purpose of speculating in real property may be entered into by parol; that in such case, the contract of partnership is not a contract for the purchase or sale of real property, or of an interest therein by one partner to the other, and hence is not within the meaning of the statute nor in conflict with it. That decision, and numerous others, holding to the same effect, the last of which is *Huson* v. *Portland etc. Co.,* 107 Or. 187, 208 (211 Pac. 897, 213 Pac. 408), are controlling upon this question.

2, 3. Defendant also contends that a contract of partnership cannot be lawfully entered into between a corporation and an individual. In this state, as in other jurisdictions, the rule is that corporations cannot lawfully enter into partnerships with each other, or with individuals: *Hackett* v. *Multnomah Ry. Co.,* 12 Or. 124 (6 Pac. 659, 53 Am. Rep. 327); *Calbert* v. *Idaho Stage Co.,* 25 Or. 412 (36 Pac. 24); *Salem-Fairfield Tel. Assn.* v. *McMahan,* 78 Or. 477 (153 Pac. 788). The reason for the existence of the rule is, that corporations can act only through their duly authorized officers and agents, and are not bound by the acts of anyone else; while in a partnership, each member binds the firm, when acting within the scope of the partnership. But, where a partnership contract has been entered into between a corporation and an individual, and has been executed by either party to the contract, and profits have been realized by one of such partners, through the transaction of

the partnership business, the rule stated cannot be invoked by such partner, to enable him or it to escape liability from accounting for and paying over to the other partner that partner's undistributed share of such profits. Especially is this so in cases where the transacted partnership business was a business in which the corporate partner was authorized to engage. On equitable principles, and as a matter of common honesty and fair dealing, the rule ought to be the same, whether the partnership business already transacted, and upon which an undistributed profit had been realized by one of the partners, was within or without the corporate powers of the corporate partner.

In *Salem-Fairfield Telephone Assn.* v. *McMahan, supra,* this court said:

"A corporation, however, may under a joint venture with others transact any business that is within the scope of its legitimate powers, and thereby become liable on account of the fiduciary relation thus assumed: * * The conclusion thus reached will make the fiduciary relation, existing by virtue of the joint venture, subject to dissolution, accounting and settlement in a court of equity in the same manner as all other cases of partnership."

4, 5. The articles of incorporation of Page-Dressler Company did not confer on the corporation the power to engage in the business of conducting an apartment house; but it did confer the power to purchase, hold and sell the apartment house property. The object for which the alleged partnership was formed was to purchase, hold and sell this particular property, and until it was sold, to engage in the business of operating it as an apartment house. The contemplated partnership business was therefore partly within and partly without the powers for which the

corporation had been formed. Corporations are not permitted to invest corporate funds for the transaction of a business which is not within the powers of the corporation. For that reason they are not permitted to enter into any joint adventure or partnership, for the purpose of carrying on any business, not within the powers for which they are formed, or to subject themselves to the general liability of a partner, since that would operate as a fraud upon stockholders who had paid their money into the corporation in reliance upon the corporation not engaging in any other business than that for which it was formed. This rule, however, for that reason alone, ought not to stand in the way of a defendant being compelled to account for any profits realized from the partnership business, after the contract has been fully executed by the other party to the contract. It is admitted that Page-Dressler Company invested none of its funds in the partnership business, but if there was a valid partnership, it was liable for the payment of the note given to the Western Loan & Building Company by Meader, and also would have been liable for any indebtedness which Meader might have created in carrying on the partnership business. Meader, therefore, ought to be compelled to account for profits, if the partnership was formed, unless for some other reason the contract was illegal.

6. The complaint alleges a partnership, and this is denied by the answer. It was, therefore, incumbent upon the plaintiff to establish the partnership. The testimony, however, leaves the matter in great doubt. That there was an intention to form a partnership, we think is clear from the testimony, but the terms of the contract which they intended to enter into are not clear. Page and Dressler both testified that

118 Or.—24

they were to secure this loan of $5,000 from the Western Loan & Building Company of Salt Lake City, Utah, and use $3,650 thereof, to pay for the property, and the balance of the money for fitting up the same as an apartment house and for the conduct of the apartment house business. They testified that neither the corporation nor Meader were to advance any money to the partnership for any purpose, it being assumed that the loan would provide all moneys necessary to purchase the property and make the business profitable. This is denied by Meader, who testified that the understanding was, that a written contract of partnership should be prepared, and that the terms thereof were to be agreed upon, subsequent to the purchase of the property. The apartment house in question had been closed for a long time; the business itself had to be established; the furnishings had to be provided, and repairs made. The claim that under these circumstances neither party was to advance any money for the partnership is not reasonable, nor consistent with ordinary business transactions of that nature. Meader's testimony seems to be more reasonable than that of Page and Dressler, and if it was necessary for us to decide the question of whether a partnership was consummated or not, we would hold that the partnership was never consummated, although both parties intended to enter in the future into a contract of that nature.

"If the contract for the joint adventure is *prima facie* valid, it is no defense to an action for an accounting to say that it was for an illegal purpose, or was performed by defendant in an illegal manner, or that he was guilty of illegal acts or fraud in the execution of it, or that the rights acquired thereunder were obtained in an illegal or immoral way. Even though the contract is against public policy, if it is

closed, the parties receiving the profits must account to his associates for their shares thereof.'' 33 C. J. p. 862, § 69.

7. The whole testimony in this case shows that Page-Dressler Company contracted with Meader to borrow from the Western Loan & Building Company for the partnership, in Meader's name alone, the sum of $5,000, and that the only security to be given therefor should be a mortgage to be given by Meader upon the apartment house property only, which was to cost the partnership but $3,650, and that at the time this contract was made there was existing between Page-Dressler Company and Western Loan & Building Company a relation of trust and confidence, upon which the loaning company relied, and had a right to rely. It is true, that at or about that time the Western Loan & Building Company had one of its representatives, for a short time, at Medford, and that Page-Dressler Company paid that representative in this transaction the sum of $50 besides paying another fee to the loaning company itself. The reason for paying that sum to this representative is not satisfactorily explained. Taken in connection with the other facts and circumstances surrounding the transaction between the Page-Dressler Company and the loaning company, the whole transaction indicates fraud upon the part of Page-Dressler Company. The representations made by Page-Dressler Company to the loaning company above referred to were intended to mislead and deceive the loaning company into a feeling of security, and there was a studied concealment upon the part of Page-Dressler Company to keep the loaning company uninformed of the fact that Page-Dressler Company had a secret interest in obtaining the loan, and were secretly in-

terested in the property upon which the security was given. As a part of the transaction, without which the loan could not have been obtained, a fire insurance policy for $5,000 covering the apartment house only was delivered by Page-Dressler Company to the loaning company, and this policy was issued by Page-Dressler Company as the local agent of the insurance company executing the policy. These circumstances show that the alleged partnership agreement, if consummated as contended for, contemplated the doing of these illegal acts upon the part of Page-Dressler Company, and stipulated that as many of these illegal acts as should be necessary to carry out the contract should be done, and performed by Page-Dressler Company, as a part of the partnership plan and scheme. The partnership contract, therefore, was not *prima facie* valid, but on its face was an illegal contract, illegally entered into, and for an illegal purpose, and hence was unenforceable.

Concerning contracts of this character, Mr. Williston says:

"An agreement which contemplates a wrong to a third person, or to undefined members of the public, whether trespass, breach of trust, or fraud, is illegal."

"The illegality of a contract or sale, may result either from the illegality of the promise, or from the illegality of the consideration given for the promise. A promise to do an illegal thing for a legal consideration is unenforceable, and equally so is a promise to do a legal thing for an illegal consideration. If the agreement is bilateral and the promise on either side is unlawful, both promises are unenforceable; for one promise is itself unlawful and the other is given for unlawful consideration. If an illegal contract has been partly executed, the parties are in effect left as they stand, for all relief for nonperformance

of the rest of the obligation is denied.'' 3 Williston on Contracts, §§ 1738–1762.

8. These fraudulent transactions which were the consideration for entering into the alleged partnership contract would prevent a court of equity, even if the partnership agreement was established, from enforcing it, since plaintiff does not come into equity with clean hands. For this reason, it is the duty of the court to leave the parties where the court finds them. See *Pacific Livestock Co.* v. *Gentry*, 38 Or. 275, 290 (61 Pac. 422, 65 Pac. 597), and authorities there cited.

For these reasons, the decree of the lower court must be affirmed. AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and COSHOW and BURNETT, JJ., concur.