Argued October 6; reversed November 3, 1931

## BARNHISEL *v.* WATTERS
(4 P. (2d) 316)

*Borden Wood,* of Portland (D. V. Kuykendall and A. W. Schaupp, both of Klamath Falls, and McCamant, Thompson & King of Portland, on the brief), for appellant.

*Clarence A. Humble,* of Klamath Falls (A. L. Leavitt, of Klamath Falls, on the brief), for respondent.

ROSSMAN, J. It will be observed from the foregoing that the plaintiff's charge that a partnership still existed between the parties at the time the complaint was filed met with an answer averring a dissolution of the partnership by mutual agreement August 22, 1927. The reply denied the allegation concerning the dissolution but made no averments of deceit, misrepresentation, or any other element of fraud. The plaintiff, as a witness, freely admitted that on August 22, 1927, he, together with the defendant, signed an instrument of which the following is a copy:

"This Agreement made and entered into this 22nd day of August, 1927, by and between T. B. Watters, the party of the first part, and Howard Barnhisel, the party of the second part.

"Witnesseth: It is hereby understood and agreed by and between the parties hereto that the partnership heretofore existing between T. B. Watters and Howard Barnhisel and known as Watters and Barnhisel is hereby dissolved.

"It is further understood and agreed that neither of the parties hereto shall from this date be bound by

any of the acts of the other co-partner, and every act or thing transacted by the said co-partnership from this date shall be, and is hereby declared to be void.''

The plaintiff admitted that he read the above instrument before he signed it and that he was familiar with all of the terms employed by it. In order to relieve himself from the effect of that instrument, he testified:

''On August 22nd Mr. Watters called me into the office and said that the bank had told him there had been several overdrafts, and, also that Bob Cheyne had been in a day or so before and threatened to file a suit against the co-partnership—I owed him about $500.00 at that time—and he said that he had done the work for me on account of knowing Watters, and he felt Watters should also be responsible for the work. And Tom told me he did not want to get into any lawsuit or in any trouble, and he wanted me to sign some kind of agreement, which he would just hold in case this suit was actually filed. He also asked that we close the account at the bank and let him carry the account in his own name until we had sufficient funds in the bank. I told him that was perfectly alright with me; and the next day, which was the 23rd, I came in the office and he handed me these papers and said: 'Here are these papers we spoke about yesterday.' And Mr. Southwell and the stenographer were there, and I just sat down and signed them and started out, and he came out with me to the hall and said: 'Now, this is merely just security for me, in case anything comes up. We won't have to publish it or anything. Mr. Schaupp drew it up, so I know it is alright. In case anything comes up I may have to use it, but if Cheyne does not file suit we won't use it and you will look after the real estate as you have been doing before.' ''

The defendant explained the circumstances preceding the alleged dissolution of the firm by narrating the following circumstances: (1) customers of the partner-

ship upon at least two occasions just prior to August 22d had complained to him that, due to their confidence in the defendant, they had accepted the plaintiff's personal checks which, upon presentation to the bank, proved to be worthless; (2) upon another occasion the defendant was compelled to satisfy out of his personal funds the demands of a customer whose rent had been collected by the plaintiff and for which the latter had given a check which was dishonored by the bank upon which it was drawn; (3) upon returning in August, 1927, from a trip to San Francisco, the defendant discovered that during his absence the plaintiff had withdrawn from the firm bank account such large sums of money for his personal use that further checks issued by him in payment of firm debts had kept the account overdrawn for the major part of the month; (4) upon the same occasion the defendant discovered that during his absence the plaintiff had borrowed from the bank upon a note, to which he had signed the firm's name, the sum of $150; (5) one Bob Cheyne complained to the defendant several times about the plaintiff's neglect to pay him a sum of money for plowing an area of land; and (6) the plaintiff had withdrawn from the firm account several hundred dollars more than the defendant. (The above facts were not disputed by the plaintiff.) The defendant testified that upon his return from San Francisco and his discovery of the above state of affairs he discussed this situation with the plaintiff, and, after telling him that he did not care to continue a partnership with one who was lax in "his personal matters," requested that the partnership be dissolved. He further testified that the plaintiff acquiesced in his views and "we drew up this dissolution of partnership and both of us signed it."

It is clearly evident that if no change had occurred in the condition of either of the parties following the execution of the above mentioned instrument, or in the volume of available business, the plaintiff would never have brought the present proceeding. However, shortly after August 22d a circumstance transpired which brought to Watters some large real estate broker's commissions. It developed out of the extension of the Great Northern railroad into the city of Klamath Falls and its need for terminal facilities. For several months prior to August engineers in the employ of the railroad company had conducted investigations, had inspected several possible terminal sites, and had prepared some preliminary plans. During this time the railroad company had purchased through the firm two small pieces of real property. Shortly after August 22d the Great Northern Railroad Company selected the precise plot of land upon which it decided to construct its terminal facilities, and instructed the defendant to secure options upon the properties comprising the tract. The prices proving to be satisfactory, the railroad company later exercised its options by completing the transactions. The plaintiff's testimony indicates that the defendant was paid approximately $9,500 by the railroad company as commission for his services in handling these transactions, and, since he contends that the partnership was still in existence when these transactions were consummated, claims a right to one-half of this sum. The defendant denied that the rate of commission upon these transactions was 5 per cent, and testified that it was 2½ per cent upon a total purchase price of $194,557, or the sum of $4,863.92. It is perhaps unnecessary to add that the defendant disputes the right of the plaintiff to any portion of this commission for the reasons already indicated.

■■ The circuit court attached no validity to the instrument of August 22d and hence concluded that the partnership was still in effect during the period covered by the aforementioned transactions conducted on behalf of the Great Northern Railroad Company. In fact, it will be observed from the portion of its decree previously mentioned that it deemed the partnership in existence at a time postdating the filing of the complaint. The conclusions and findings of an experienced judge who sees the witnesses, observes the manner in which they testify, and takes note of their demeanor upon the witness stand, all of which ofttimes reveal the credibility of the witness and create impressions not conveyed by the stenographic notes, are always entitled to much weight, and we would yield to the opinion of the circuit judge who presided over the trial of this cause much cogency, but for the circumstances which we shall now mention: (1) It is evident from his carefully prepared opinion that he was much persuaded by the decision in *Stem v. Warren,* 185 App. Div. 823 (174 N. Y. S. 30), wherein it was held that a partner was without power to dissolve a partnership for the fraudulent purpose of excluding his associates from participation in the expected profits of pending business; and (2) by the holdings in *Williamson v. Monroe,* 101 Fed. 322, and *Karrick v. Hannaman,* 168 U. S. 328 (18 S. Ct. 135, 42 L. Ed. 484), to the effect that a partner who desires to bring about the dissolution of a firm shall not breach that good faith which each owes to the other to impart full knowledge of the condition of the partnership.

The plaintiff urges upon our attention the cases just cited, together with many others to similar effect. We readily acquiesce in these holdings, but fail to find in the evidence any fact which would warrant the appli-

cation of these principles to the present cause for the reasons which we shall now state. Although the plaintiff testified at length concerning all of the details of the relationship between himself and his partner, he at no time claimed ignorance of the relationship between his firm and the Great Northern Railroad Company on August 22d when he attached his signature to the aforementioned instrument. In fact, he described two previous purchases made by his firm on behalf of the Great Northern Railroad Company in which he assisted and in which the railroad company paid his firm a commission of $1,000. He also mentioned some communications which had passed between his firm and the railroad company's offices in other cities by means of telegraph and long-distance telephone. Likewise, according to his testimony, he had spoken to Mr. L. C. Gilman, vice president of the Great Northern Railroad Company, and other officials of that line who were in charge of these transactions, upon the occasions of their visits to the office of plaintiff and defendant. Apparently his contact with the railroad officials prior to August 22d was as intimate as that of the defendant. Likewise, the evidence affords no basis for a belief that the defendant had a secret understanding with the railroads for the subsequent services. In fact, the only reasonable conclusion which the evidence warrants is that on August 22d the railroad company had not yet decided where it would locate its terminal facilities, that it entertained a good opinion of the defendant, and that the latter was unaware of the fact that a few days hence he would be called upon to perform the services which later brought him the large commissions.

■ The above being the facts, we are compelled to conclude that the defendant dealt honestly with his part-

ner and was guilty of no concealments and no breach of the good faith which the fiduciary relationship existing between the partners demanded. In fact, it will be observed from the review of the pleadings which precedes this decision that the plaintiff nowhere charges fraud. We quote from his brief: "There is no hint or suggestion of fraud in the complaint or reply. The plaintiff has given no hint throughout the trial that he was in any way relying upon fraud." One who intends to impeach an instrument for fraud, in the negotiations out of which it arose, must allege the fraudulent representations upon which he will rely: *Runnells v. Leffel;* 93 Or. 342 (176 P. 802, 183 P. 756); *Hansel v. Norblad,* 78 Or. 38 (151 P. 962); Clark on Code Pleading, p. 423. It is, therefore, our opinion that the above cited authorities have no application to the facts of this cause.

■ We are, therefore, returned to the issue whether the instrument of August 22d was executed purely for the purpose of shielding the partnership from the embarrassments which the parties anticipated would result from the plaintiff's financial difficulties, or whether it was intended to carry into effect its expressed purpose; that is, to dissolve the partnership. If its object was the former, it will be observed that the parties thereby endeavored to commit the wrong of conducting the partnership business in the name of the defendant for the purpose of perpetuating a fraud upon the creditors of the plaintiff. If such was the intent, the plaintiff is entitled to no assistance from a court of equity to compel an accounting because of his unclean hands: *Smith v. Barnes,* 129 Or. 138 (276 P. 1086); *Page-Dressler Co. v. Meader,* 118 Or. 359 (244 P. 308); Pomeroy's Equity Jurisprudence (4th Ed.), § 401. The fact that his partner, the defendant,

participated in the fraud could not help the plaintiff: *Cleveland-Cliffs Iron Co. v. Arctic Iron Co.,* 171 C. C. A. 611 (261 Fed 15). Likewise, the circumstance that the fraud was directed against third parties and not the defendant is immaterial: *Pacific Livestock Co. v. Gentry,* 38 Or. 275 (61 P. 422, 65 P. 597); *Sharpless-Hendler Ice Cream Co. v. Davis* (Del.), 151 Atl. 261.

■ This suit might well be dismissed for the reason just stated, but another reason, which is more satisfactory to ourselves, exists and we prefer to base our conclusion upon it: it is our conviction that the instrument does and was intended to dissolve the partnership. However, preliminary to a statement of the reasons which brought us to this conclusion, we deem it well to dispose of the plaintiff's explanation for the absence of all allegations of fraud in the complaint and the reply. He contends that the proof in contradiction to the instrument of August 22d was admissible, not for the purpose of proving fraud, but to show that that instrument was "in fact only given as security"; that is, to assure Watters that the partnership would not become involved with the plaintiff's financial difficulties. He contends that his situation is analogous to that of another who is endeavoring to prove that a deed absolute in form was executed as security only. It seems self-evident that the legal principle which the plaintiff invokes can have no application in the present instance because it is obvious that the agreement of August 22d was not given to operate as security for the repayment of any sum of money. But, even if the plaintiff's evidence could be construed as an effort to prove that the instrument of August 22d was executed to secure the defendant against liability for the plaintiff's personal debts, he would still be confronted with the rule which exacts of a party who undertakes to

prove that a conveyance absolute in form was given as security only, clear and convincing proof: Wigmore on Evidence (2d Ed.), § 2498, note 22. The testimony of the plaintiff in support of his contention stands virtually alone. It was contradicted by the defendant who testified not only to the circumstances already enumerated but also swore that after August 22d each of the two partners conducted his business alone, and that from that time on he bore all of the office expenses and permitted the plaintiff to retain deskroom only until he could secure space at some other location. September 24th the plaintiff found other office space and then moved from the quarters of the defendant. Much of the defendant's testimony is corroborated by that of the young lady who was employed by the firm as stenographer and bookkeeper. It is our opinion that the plaintiff's contention which seeks to overcome the effect of the instrument is not supported by testimony of the required cogency, and, accordingly, we conclude that the partnership was dissolved August 22, 1927.

The above being our conclusion, it follows that the defendant is entitled to a decree in his favor, awarding him judgment for the amount owing him as shown by the books of the partnership August 22, 1927, which amount, we understand, is one-half of the sum of $618.94. The cause will be remanded to the circuit court with instructions to enter the appropriate decree.

BEAN, C. J., RAND and KELLY, JJ., concur.