Argued December 4, 1919, reversed and dismissed January 20, rehearing denied March 2, 1920.

## GARDNER *v.* PORTLAND.

(187 Pac. 306.)

**Municipal Corporations—Decree Enjoining Collection of Assessment for Street Improvement Does not Bar Reassessment.**

1. A decree invalidating assessment for street paving because the city could not levy an assessment until work was completed does not bar the city from levying and collecting an assessment after completion of the improvement, for otherwise the provisions of Charter of Portland 1903, Section 400, retained as an ordinance under the present Initiative Charter, Section 284, and relating to reassessments where assessments are held invalid, would be meaningless.

Municipal Corporations—Allegation by Single Owner That Improvement Would have Been Defeated by Remonstrances Insufficient Since It Requires Owners of 60 Per Cent of Affected Property Therefor.

2.   Where a city declared its intention to pave a street at grade, and so made the improvement, except that a viaduct was built over railroad tracks by railroads and street pavement made thereon, an allegation by single owner that the improvement was abandoned and would not have been consented to, but would have been defeated by remonstrances, is ineffectual, since under Charter of Portland, Section 284, the owners of 60 per cent of the affected property are required to defeat an improvement.

Pleading—Hypothetical Allegations Do not Present Issuable, Material Fact.

3.   The allegation in a complaint of what would or would not have been done is hypothetical, and does not constitute issuable fact, and is immaterial.

Equity—Property Owner Failing to Object to Making and Accepting of Street Paving Improvement on Other Than Original Plan cannot Object to Assessment Therefor.

4.   In a suit to cancel city street paving assessments, where the city secured a better and safer improvement at less cost than under the established grade plan on which it had declared its intention to improve, and plaintiff by failing to object lured the city to make and accept the improvement, he does not come into equity with clean hands.

Municipal Corporations—City's Right to Assess Benefited Property for Street Paving not Lost Where It in Good Faith Altered Grade.

5.   Where a city declared its intention to pave a street at its established grade and in good faith permitted railroad companies to build a viaduct on street over their tracks at their expense for safer crossings, thus changing part of street grade, to which property owners did not object, the city, particularly in view of Charter of Portland, Section 265, is entitled to make and collect a fair assessment therefor from the benefited property where the alteration of the grade imposed no additional servitude.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.

This is a suit in equity by which the plaintiff seeks a cancellation of an assessment levied upon his property to aid in payment of the expense of improving Holgate Street in the City of Portland by paving the same.   It is the same improvement mentioned in *Ukase Investment Co.* v. *City of Portland, ante*, p. 176, (186 Pac. 558), in which an opinion has this day been

rendered. The two causes differ only in the fact that the other case was a writ of review and this is a suit in equity. The facts are the same in both cases. Suffice it to say in this case the plaintiff seeks to defeat the assessment, among other things, on the ground that the city made a substantial departure from the original plan, amounting, as the plaintiff contends, to an abandonment of the same, with the result, as he claims, that it has lost jurisdiction to assess for the work in its present form. It appears that the city declared its intention to improve Holgate Street by paving it on the then established grade. The thoroughfare runs east and west in the city and crosses the railroad tracks, ten in number, of the Southern Pacific Company and the Oregon-California Railroad Company. After due proceedings a contract was let for making the improvement on the old grade. As the work progressed it became apparent that it would be advantageous to the public that the city grade be raised on six blocks covering the railroad tracks, so that the crossing would be overhead instead of at railroad grade. Without objection being interposed, although regular notice thereof was given, the city passed an ordinance raising the grade sufficiently to accomplish that purpose. In addition to that, after the contractor had finished other portions of the pavement according to the original design, work was suspended until arrangements were made whereby the railroad companies at their own expense built a viaduct of steel and concrete construction on the new grade. Pending this, the city undertook to levy an assessment to pay for the already completed portion of the pavement. This was defeated by a suit which was decided in favor of this plaintiff against the city, wherein it was held in substance that an important part of the pavement cover-

ing the six blocks already mentioned had been omitted and until the work was completed the city had no right to levy an assessment. The plaintiff contends that this decree is a final adjudication ousting the city of all power ever thereafter to assess for that improvement, and urges this as one ground for his present suit. This, however, was before the viaduct had been completed. After it was finished the original contractor, after making proper reduction of the price, laid the pavement over the viaduct, the final result being that the pavement is uniform, so far as texture and utility are concerned, throughout the whole district, the only material exception being that over the six blocks mentioned it is laid on the new grade.

The city engineer at this point made his certificate to the council to the effect that the work had been completed substantially according to the original design. The council gave notice of the filing of the certificate and thereby required property owners who were opposed to the acceptance of the improvement thus made, to file their objections. None were filed, and without objection in any form the council accepted the improvement. It then directed the proper officer to prepare a preliminary assessment on the property in the district, to cover the net cost of the improvement. Notice was given that opportunity would be offered at a certain date to file objections to the adoption of the assessment. Interested parties did file objections. It is not alleged in the complaint that the plaintiff filed any; neither do any objections by him appear in evidence. Those filed, however, were referred to the commissioner on public works, who, with the aid of the city attorney, examined the matter and made findings of fact and conclusions of law overruling all the objections. The findings and conclusions were reported to

the council and a date was set for their consideration.
No one appeared in support of the objections and the
council adopted the findings of fact and conclusions of
law thus reported, and overruled all the objections to
the assessment. It afterwards passed an ordinance
levying the assessment as reported. Then followed
this suit to enjoin its collection. The Circuit Court
sustained the objection and canceled the assessment.
The city appealed.          REVERSED AND DISMISSED.

For appellants there was a brief over the names of
*Mr. L. E. Latourette,* Deputy City Attorney, and *Mr.
Walter P. La Roche,* City Attorney, with an oral argument by *Mr. Latourette.*

For respondent there was a brief and an oral argument by *Mr. W. Y. Masters.*

BURNETT, J.—1. Section 400 of the Charter of
Portland, approved January 23, 1903, retained as an
ordinance under Section 284 of the Initiative Charter
of the city revised August 19, 1914, reads in part as
follows:

''Whenever an assessment for the opening, altering,
or grading of any street, or construction, reconstruction, or repair of any sewer, or for any local improvement which has been or may hereafter be made by the
city, has been or shall hereafter be set aside, annulled,
declared or rendered void, or its enforcement refused
by any court of this state, or any federal court having
jurisdiction therein, whether directly or by virtue of
any decision of such court, or when the council shall be
in doubt as to the validity of such assessment, or any
part thereof, the council may, by ordinance, make a new
assessment or reassessment upon the lots, blocks, or
parcels of land which have been benefited by such improvement to the respective and proportionate shares

of the full value thereof.  Such reassessment shall be based upon the special and peculiar benefit of such improvement to the respective parcels of land assessed, at the time of its original making, but shall not exceed the amount of such original assessment. * * Such reassessment shall be made in an equitable manner, as nearly as may be in accordance with the law in force at the time it is made; but the council may adopt a different plan of apportionment of benefits when, in its judgment, essential to secure an equitable assessment. The proceedings required by this charter to be had prior to the making of the original assessment shall not be required to be taken or had within the intent of this section.  Such reassessment shall be made and shall become a charge upon the property upon which the same is laid, notwithstanding the omission, failure, or neglect of any officer, body, or person to comply with the provisions of this charter connected with or relating to such improvement and assessment; and notwithstanding the proceedings of the council, executive board, board of public works, or any officer, contractor, or other person connected with such work, may have been irregular or defective, whether such irregularity be jurisdictional or otherwise * * ."

Section 265 of the present Charter of the City of Portland reads:

"The council shall have the right, power and authority to determine whether any railroad crossing of any street or highway within the corporate limits of the City of Portland is dangerous, and to provide for the elimination of any grade crossing of any railroad on such street or highway, whenever, in the opinion of the council, it is necessary to eliminate the same."

The contention of the plaintiff that the former decision of the Circuit Court enjoining the collection of the assessment there involved bars the present suit cannot be sustained.  All that decree pretended to determine was the validity of that particular assessment.  It is

manifest that no further steps can be taken by the city to collect the assessment there involved. But that impost is not here in question. What we are called upon to determine is whether the new assessment is valid. An improvement has been actually made. It exists. It has been determined by the council in regular proceedings that it is beneficial to the property assessed. As said by Mr. Justice WOLVERTON in *Duniway* v. *Portland,* 47 Or. 103, 110 (81 Pac. 945):

"The remedy is not for a collection of the old assessment, as was that afforded by Section 156 of the old charter, but for a reassessment of benefits derived from the failed improvement, not failed because not made, but failed because of an irregularity in the procedure for impressing the lien for the costs of the benefits, and a collection of such reassessment." (Citing authorities.)

The reassessment system devised by Section 400 would be empty and meaningless if the former decree described in the complaint should be construed absolutely to bar for all time any effort of the city to collect by assessment the expense of a really completed and useful betterment.

2, 3. It is said in substance in the complaint that the improvement was abandoned and that it "would not have been consented to by the property owners adjacent to said street and whose property was to be assessed to pay for said improvement, but sufficient remonstrance would have been made against said improvement as attempted to be made by said city, to defeat the same, under the provisions of the city charter." What would or would not have been done does not constitute issuable fact and is immaterial to the present inquiry: *Churchill* v. *Meade,* 92 Or. 626 (182 Pac. 368). Moreover, the present Charter in Section

284 thereof reserves the right only to "the owners of 60 per centum in extent of the property affected by any assessment for a local improvement except for street opening or sewers to defeat the same by remonstrance." The allegation noted is also ineffectual for the reason that the plaintiff does not pretend to represent 60 per centum in extent of the property involved.

4, 5. The whole subject of reassessment under charters such as we have before us, is exhaustively treated in the opinion of Mr. Justice McCAMANT in *Wagoner* v. *La Grande,* 89 Or. 192 (172 Pac. 305). The record does not show that the whole amount of the assessment exceeds the amount of the original assessment. On the contrary, by the erection of the viaduct at their own expense by the railroad companies a material saving on the whole assessment was effected. The substance of the situation is that at a less total cost a better and safer improvement has been installed and is in use. Although warned of the matter, the plaintiff made no objection to the acceptance of the improvement as finally established. He does not come into court with clean hands, in that by his failure to object he lured the city on to make the improvement and to accept it in its present form. The equitable principle established by the decisions based on charters and city legislation like that in question is that when the city in good faith, without fraud, installs a really beneficial improvement, it is permissible to collect a fair and valid remuneration from the property benefited thereby. No additional servitude was imposed upon any of the property by the alteration of the grade: *Brand* v. *Multnomah County,* 38 Or. 79 (60 Pac. 390, 62 Pac. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389); and in the absence of any showing that the total assessment is greater than

95 Or.—25

the former already set aside, the plaintiff has not disclosed any injustice from which a court of equity will relieve him.

The decree of the Circuit Court is reversed and one here entered dismissing the suit.

REVERSED AND DISMISSED.   REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.