EAST TENNESSEE & WESTERN NORTH CAROLINA RY. CO. v. ROBINSON, et al.

LINVILLE RIVER RY. CO. v. SAME.

Western Section.   March 29, 1935.

Petition for Certiorari denied by Supreme Court, June 29, 1935.

Cox, Taylor, Epps & Miller, of Johnson City, for complainants.
Lovette, Berry & Easterly, of Greeneville, for defendants.

KETCHUM, J. These two suits grow out of the same trans-
action, and inasmuch as the facts applicable to the one case are
equally applicable to the other, they were consolidated and heard
together. The bills were filed by the two railway companies against
F. P. Robinson, Moultrie Hitt, and Ben B. Cain to enjoin the prose-
cution of two actions at law brought by said defendants against
the complainants in the circuit court at Johnson City to recover
upon alleged contracts for attorneys' fees, and to have said con-
tracts declared void and canceled. As a condition to the granting
of the writs of injunctions, the complainants were required to con-
fess judgments in favor of the defendants, who were the plaintiffs
in said actions at law, for the amounts claimed, to-wit, $6,887.49
against the East Tennessee & Western North Carolina Railway
Company and $3,884.81 against the Linville River Railway Com-
pany. The said amounts were claimed to be due by the complain-
ants to the said Cain and Hitt for legal services rendered by them
in a certain proceeding before the Interstate Commerce Commission
relative to an increase in mail pay rates in behalf of a large number
of short line railroads. The declarations alleged that the said Cain
and Hitt were employed for this work on November 6, 1925, by a
committee of the American Short Line Railroad Association of
which the complainants were members, and that pursuant to such
contract the said Cain and Hitt were to receive as their compensa-
tion all of the increase of mail pay rates granted by the Interstate
Commerce Commission for the first six months the new rates were in
effect, and one-third of any retroactive pay allowed by the com-
mission; and it was alleged that through their efforts the commis-
sion allowed an 80 per cent. increase in mail pay rates to com-
plainants, to be retroactive for three years, and that under said
contract of employment the complainants owed them the amounts
sued for, which they had refused to pay. It was also alleged that
said claims had been assigned by Cain and Hitt to the defendant
F. P. Robinson.

The complainants in their bills alleged that the American Short
Line Railway Association was a corporation organized to promote
the interests of the short line railroads, and to represent them in
matters pertaining to their interests before the Interstate Com-
merce Commission and other governmental agencies; that complain-
ants were members of said association and had paid into its treasury
substantial sums of money over a long period in return for the

assistance of said association, and that the defendants Moultrie Hitt and F. P. Robinson, a brother of the said Bird M. Robinson, were assistants to the president, and that Ben B. Cain was vice-president and general counsel of said association; that as such officers they were paid regular salaries; and that the association itself, as well as its officers, were agents of the complainants, and that complainants were entitled to the assistance of the association in all matters affecting their interests as short line railroads. It was alleged that the relationship between the association and its members was fiduciary in character and one of trust and confidence.

The bills set out at some length the correspondence between the Short Line Railway Association, through its president, Bird M. Robinson, with complainants, relative to the employment of attorneys to represent them in securing an increase of their mail pay rates, which correspondence resulted in the signing by the complainants of a letter prepared by the said Robinson, of date August 1, 1925, authorizing him to appoint a committee to select attorneys to represent the short line railroads in the prosecution of their claims for an increase in their mail pay rates; and that this committee met in Miami, Fla., in November, 1925, and employed the said Ben B. Cain and Moultrie Hitt as such attorneys.

The bills alleged that the employment of Hitt and Cain by said committee was unauthorized, fraudulent, and void because Hitt and Cain were officers and agents of the Short Line Railway Association, receiving regular salaries as such, and that the letter of August 1, 1925, signed by complainants gave no authority to the president of the association, or the committee appointed by him, to employ the said Hitt and Cain on the basis of compensation set out in the letter of August 1, 1925, (1) because the appointment of said Hitt and Cain was the culmination of a fraudulent scheme on the part of the defendants and the president of the association to cheat and defraud the complainants and the other members of the association in violation of the fiduciary relationship which the association and its officers owed to complainants; (2) because the said contract and the employment of Hitt and Cain were void for lack of consideration because they were officers of said association and were already obligated to complainants to perform the services called for by said contract; (3) because they had already received under said contract much more than they had expended for fees and expenses incurred in securing said increase in mail pay, and that defendants had ignored said request.

In addition to the prayer for an injunction and for the cancellation of said contract, the bill prayed for a reference as to certain matters and for a full discovery under oath as to certain matters, and especially as to the number, names, and post office addresses of all the short line roads which had joined in said proceeding, the

amounts of increased mail pay received by each, the amounts of fees and expenses incurred by the defendants in the prosecution of said claim, and the amounts received by Hitt and Cain for their services and by whom paid; the amount paid to or retained by the said Bird M. Robinson, the president of the association; and as to any contract or agreement between the said Bird M. Robinson and the defendants, or the committee, or the Short Line Railway Association, all to the end that the court might see the true relationship existing between said parties, and especially the fiduciary relationship existing between them and the complainants.

The defendant Ben B. Cain died after the filing of the bill and without having answered it. The defendants Moultrie Hitt and F. P. Robinson, as assignee of the claims of Cain and Hitt, filed their answers in which they alleged that the American Short Line Railway Association was a nonprofit organization organized for the purpose of co-operative action in the solution of transportation problems, and that its action was advisory only. All the charges of fraud made in the bill were denied and it was alleged that the complainants were kept advised by the president of the association of every step taken by him and by the committee in connection with the employment of Cain and Hitt; that defendants were advised that the Short Line Association could not prosecute their claims before the Interstate Commerce Commission, but would assist them in employing competent attorneys to handle their claims; that complainants were advised of the action of the committee in employing the defendants as the attorneys to represent the short line railroads in said proceeding and the terms of the employment; that complainants had corresponded with them during the progress of the case and had never objected to their employment until after their work was concluded and the demand was made for the payment of the attorney's fees. It was further alleged that the proceeding before the Interstate Commerce Commission was successful and had resulted in a great increase in the mail pay rates for the short line roads, including the complainants, and that the complainants had profited greatly by reason of their services. The defendants in their answers also set out that Cain and Hitt had for a valid and valuable consideration assigned their claims for compensation to their codefendant F. P. Robinson.

The defendant F. P. Robinson in his answer alleges that the said Ben B. Cain, now deceased, furnished all of the money to bear the expense of the preparation of all of said numerous claims and the expense of the hearings, and that since his death the defendants had been unable to get access to the records showing the various items and to whom paid, but avers that the amount of said expenses was about $50,000. The defendant Moultrie Hitt answered that he had furnished all of the money to bear the expense of prosecuting

said claims, amounting to about $18,000, which had since been increased by the cost of collection to about $50,000.

The said defendants in their answers did not discover as required by the bill as to the amounts paid to or retained by the said Bird M. Robinson, or as to the agreements or contracts which they had with him for a division of their fees; or as to the amounts received by them from the other members of said association; as to these matters the answers were not only evasive and not responsive, but were sworn to only upon information and belief.

The chancellor made an extensive finding of facts, including all the correspondence leading up to the appointment by the said Bird M. Robinson of a committee to employ counsel to prosecute the claims of the short line railroads for an increase of their railway mail pay rates; the recommendation of the said Bird M. Robinson to the committee suggesting the employment of the said Ben B. Cain and Moultrie Hitt and the compensation to be paid them; the resolution of the said committee appointing the defendants Hitt and Cain upon the basis suggested, all of which constituted the alleged contract of employment upon which the defendants based their claim for compensation.

The chancellor found, and we fully concur in his findings, that complainants had for many years been members of the Short Line Railway Association and had paid annual dues and assessments thereto; that Bird M. Robinson had been the president of said association from its organization until his death a few months ago at an annual salary of $12,000 to $18,000; that the said Ben B. Cain was the vice-president and general counsel at an annual salary of $8,000 to $12,000; that Moultrie Hitt was an assistant to the president and was paid an annual salary varying from $3,600 to $6,000; and that Frank P. Robinson was also an assistant to the president at an annual salary varying from $2,500 to $6,000. He also found that prior to 1925 an increase in mail pay rates had been granted to the New England Trunk Lines and two New England Short Lines and to twenty-three short lines in the Inter-Mountain & Pacific Coast territory, and it was decided to bring the subject to the attention of other short lines and advise them to join in a proceeding for the purpose, and the said Bird M. Robinson, in February, 1925, addressed a letter to all members of the association on the subject. This was the beginning of the correspondence which culminated in the employment of Cain and Hitt by the committee appointed by the said Bird M. Robinson.

Pursuant to the recommendations of said Bird M. Robinson, the president of the association, one hundred seventy-three short line railroad companies, including the complainants, signed a letter addressed to the said Bird M. Robinson authorizing him to appoint a committee to employ attorneys to prosecute said claims upon the

terms suggested by him, and the committee so appointed, together with the said Bird M. Robinson and Hitt and Cain, met at the Elks Club in Miami, Fla., where the said Bird M. Robinson recommended to the committee the employment of the said Cain and Hitt as such attorneys for the short line roads, and the compensation to be paid them, and the committee adopted a resolution in accordance with his recommendations.

Cain and Hitt prosecuted said claims before the Interstate Commerce Commission, which granted an increase of 80 per cent. in the mail pay rates, but the postmaster general declined to pay the claims in accordance with this decision, and it became necessary to prosecute a test case before the court of claims and finally before the Supreme Court of the United States. This suit was prosecuted by the said Cain and Hitt and resulted in an affirmance of the order of the Interstate Commerce Commission. The expense of the entire proceeding was borne by the said Cain and Hitt, and the result was admittedly favorable to the short line roads.

The chancellor found, and we concur in his finding, that a fiduciary relationship existed between the Short Line Railway Association and its officers on the one hand, and the short line railroads which were members of the organization on the other, and that it was the duty of said officials to secure for them the best possible results at the least possible cost, but that the said officers took advantage of the confidence and trust reposed in them, entered into an arrangement among themselves by the terms of which the said Hitt and Cain would be employed by all the roads belonging to said organization, and receive fees probably amounting to several hundred thousand dollars which they would divide among themselves in the proportion of one-third to each. He also found that it was in the mind of the said Bird M. Robinson from the beginning that the said Cain and Hitt should be employed as attorneys in such matter, and at his instance they filed petitions for, and in the name of, complainants and a large number of other railroads long before they were employed by said committee, and in fact before the appointment of said committee, and in this way the appointment of the attorneys was taken out of the hands of the committee, and they were named by Robinson himself, and upon the terms suggested and fixed by Robinson himself. The chancellor found as a fact, and we concur in his finding, that Cain, Hitt, and Bird M. Robinson each received one-third of the fees collected, and that there was an agreement in advance for such division of the fees. These facts were all withheld or concealed from the complainants in the negotiations for the fees, and we feel no hesitancy in saying that there was a breach of the confidence and trust which complainants reposed in Robinson and Cain and Hitt, the officers of the association. The fees collected amounted to a very

large sum of money, approximately $330,000, and the complainants and the other short line roads were entitled to a full disclosure of all the facts when they made their contract for the fees they were to pay. It is not sufficient that they knew in advance what they were to pay. They might, and probably would, have made an entirely different contract if they had known that their representative, Bird M. Robinson, was making a contract for his own benefit.

The chancellor held that the contract for compensation which was made the basis of the action in the circuit court was void and unenforceable, and that the defendants were not entitled to maintain their action thereon, and the preliminary injunction was made permanent. The court was of opinion, however, that the said Cain and Hitt rendered valuable services to complainants in said proceedings for an increase in their mail pay rates for which they should receive reasonable compensation, and he accordingly entered a decree in favor of said F. P. Robinson as assignee of Cain and Hitt for $3,196.85 against the East Tennessee & Western North Carolina Railway Company and $1,803.15 against the Linville River Railway Company, or a total sum of $5,000 in all.

The defendants Hitt and F. P. Robinson, assignee, have appealed and filed eight assignments of error, all based upon the facts as found by the chancellor, and in his ultimate conclusion that the said contracts were fraudulent, inoperative, and void. We do not deem it necessary to consider these several assignments, or to review the facts further than we have done. It is sufficient to say that we concur in the findings of fact as made by the learned chancellor and adopt the same as the findings of this court. We also concur in his conclusion that the contract sued upon was void and unenforceable and that the defendants were not entitled to maintain their action thereon, and that the preliminary injunction was properly made perpetual.

The law applicable to this question is aptly stated in the authorities cited by the chancellor. In a note to Gardner v. Ogden, 22 N. Y., 327, as reported in 78 Am. Dec., 192, 211, the rule is stated as follows:

"One who undertakes to act for another cannot in the same matter, act for himself, and this rule applies to all persons standing in relations of trust. . . . The fact that there was no fraud in the transaction is immaterial. Any act of a trustee in violation of this trust is invalid. To afford complete protection to a trustee who deals with a cestui que trust, such statement and information should be given that the court may see that the proposed dealing is fair, and that the act was done with as much knowledge as was possessed by the trustee in respect to the trust property."

The rule is stated in 2 Corpus Juris, Title "Agency," section 363, pages 706-710, as follows:

"As a general rule an agent is not permitted to enter into any transaction with his principal on his own behalf respecting the subject matter of the agency, unless he acts with entire good faith and without any undue influence or imposition, and makes a full disclosure of all the facts and circumstances attending the transaction. . . . Because of possible abuses of the confidence and trust reposed in the agent, and of his commanding influence over the principal, and of the natural conflict of duty and interest in dealings between the principal and the agent, the law views with suspicion, and scrutinizes closely, all dealings between them in the subject matter of the agency in order to see that the agent has dealt with the utmost good faith and fairness, and that he has given the principal the benefit of all his knowledge and skill; and if it appears that the agent has been guilty of any concealment or unfairness, or if he has taken any advantage of his confidential relation, the transaction will not be allowed to stand."

As to what constitutes a fiduciary relationship, the rule is accurately stated in Dick v. Albers, 243 Ill., 231, 90 N. E., 683, 685, 134 Am. St. Rep., 369, 372, in the following language:

"A person is said to stand in a fiduciary relation to another when he has rights and duties which he is bound to exercise for the benefit of that other person. In such case he is not allowed to derive any profit or advantage from the relation between them, except upon proof of full knowledge and consent of the other persons. The relations of attorney and client, principal and agent, guardian and ward, are familiar illustrations of fiduciary relations. The relation exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence. The rule embraces both technical and fiduciary relations, and those informal relations which exist wherever one man trusts in and relies on another. The origin of the confidence reposed is immaterial."

The defendants insist with much earnestness that complainants ratified the employment of Cain and Hitt, because they failed to object thereto promptly after they received the resolution of the committee which was mailed to them on December 28, 1925. The argument is that complainants made no objection to their employment at that time, but first objected thereto after Cain and Hitt had completed their work and complainants were enjoying the benefit of their services. This is a plausible argument and would be unanswerable if Cain and Hitt and Bird M. Robinson had dealt fairly with complainants and had put them in possession of all the material facts, but it has no application where material facts have been purposely concealed. The applicable rule is correctly stated in 2 Corpus Juris, Title "Agency," section 109, page 489, as follows:

"Generally speaking, a ratification may be implied from any acts, words or conduct on the part of the principal which reasonably tends to show an intention on the part of the principal to ratify the unauthorized acts or transactions of the alleged agent, provided, the principal in doing the acts relied on as a ratification acted with knowledge of the material facts."

And, in a footnote to this section, quoting from the case of Proctor v. Tows, 115 Ill., 138, 3 N. E., 569, it is said:

"An implied ratification of the acts and declarations of one assuming to act as agent of another must be based upon a full knowledge of all the facts."

And, in the same article at page 495, section 115, it is said:

"The mere fact that the principal has received or enjoyed the benefits of the unauthorized act will not amount to a ratification, if he did so in ignorance of the facts."

In this connection, it must be borne in mind that complainants were members of the Short Line Railway Association of which Bird M. Robinson and Cain and Hitt were the principal officers, and they therefore owed to complainants the utmost good faith in imparting to them all the material facts. The leading case on the question in this state is Planters' Bank v. Hornberger, 44 Tenn. (4 Cold.), 531, 571, where the court say that:

"It becomes the attorney, not merely to rely on the written contract or instrument, but to show all the facts necessary to sustain it as a paper of high merits; and to do this, he must show chiefly that the client understood the whole matter ad litem, was fully and completely informed of the nature, result and consequences of the instrument or contract; was advised, with the highest good faith (uberrima fides), of each and every circumstance likely to influence his mind or feelings against the execution of the paper; and more than this must he show, namely: that he has informed himself of all the facts necessary to give his client full information, and in the greatest freedom has imparted it to his client, together with such legal knowledge of the consequences of the same, and its true legal construction, so far as the client might command his legal knowledge in the same manner with a third person, and to the same extent that the law imposes it upon every attorney—to impart to his client the legal consequences of his acts."

And, in concluding the opinion in that case, the court lays down certain rules or requirements exacted of attorneys in contracting with their clients, among which the second and third are pertinent to this inquiry, to-wit:

"2d. That the means used to obtain the contract be free, not only of fraud, actual or constructive; but, also, of any other inequitable consideration.

"3d. That every material circumstance, or fact, connected with

the execution of the contract, and calculated to inform the client of his rights and responsibilities, be declared to him without reservation.''

Cain and Hitt and Robinson have not met the exactions of this rule in their dealings with the complainants. They not only failed to impart to complainants material facts within their knowledge, but they carefully concealed from them facts which would have undoubtedly influenced them in the making of the contract of employment. The chancellor was right in holding that the contract was inoperative and void. The defendants' assignments of error must therefore be overruled and the decree of the chancellor on this feature of the case will be affirmed.

From that part of the decree of the chancellor adjudging that Cain and Hitt were entitled to be compensated on a quantum meruit basis, and rendering decrees for $3,196.85 against the East Tennessee & Western North Carolina Railway Company and $1,803.15 against the Linville River Railway Company, the complainants have appealed and assign errors here.

The questions raised by their two assignments of error are:

First, that the equitable maxim that he who seeks equity must do equity is not applicable to the facts of this case (a) because the complainants have done equity to the defendants; (b) because the defendants' hands are unclean and they have been guilty of a violation of the duties imposed by the relationship of trust and confidence which existed between the parties; and (c) because they had concealed material facts from the complainants, and especially the fact that they were to devide their fees with the said Bird M. Robinson.

Second, that the contract of employment being void for fraud, defendants were entitled to be compensated only upon the basis of their regular salaries as officers of the Short Line Railway Association of which complainants were members.

It is also contended that the defendants are not entitled to be compensated for their services on a quantum meruit basis because they base their claim entirely upon their contract and have not asked for compensation upon a quantum meruit basis and have filed no cross-bill asking for such relief.

■ Taking up this last question first, the rule seems to be that in the application of this maxim, it is within the province of a court of equity, as a condition to granting relief, to make it conditional upon the complainant's observing the requirements of conscience and of righteous conduct, even though this is not demanded by cross-bill. White v. Massee, 202 Iowa, 1304, 211 N. W., 839, 66 A. L. R., 1434.

■ The maxim that he who seeks equity must do equity is fundamental, and no principle is better settled than that a court

of chancery in granting equitable relief to a complainant will require of him whatever the defendant may, in good reason and good conscience, be entitled to in reference to the subject-matter of the suit. The condition thus imposed upon the complainant is, as it were, the price of the decree which the court gives him. Gibson's Chancery, section 39; 1 Pomeroy's Equity, sections 385-387.

Mr. Pomeroy, in section 385, says:

"The court will not confer its equitable relief upon the party seeking its interposition and aid unless he has acknowledged and conceded, and will admit and provide for all the equitable rights, claims and demands justly belonging to the adverse party, and growing out of, or necessarily involved in, the subject matter of the controversy. It says, in effect, that the court will give the plaintiff that to which he is entitled only upon condition that he has given, or consents to give, the defendant such corresponding rights as he also may be entitled to in respect to the subject matter of the suit."

And, in section 386, he further says:

"The principle only requires the plaintiff to do equity. According to its true meaning, therefore, the terms imposed upon the plaintiff as the condition of his obtaining the relief, must consist of the awarding or securing to the defendant something to which he is justly entitled by the principles and doctrines of equity, although not perhaps by those of the common law,—something over which he has a distinctively equitable right."

█ The question then is, What, if anything, are the defendants, in good conscience and by the principles and doctrines of equity, justly entitled to for their services? The view of the chancellor was that since they had rendered valuable services and had borne the expense of the litigation, they were entitled to a fair and reasonable compensation which he fixed at $5,000, or less than half the amount claimed under the contract which he held had been fraudulently obtained. In other words, he, in effect, held that the amount of the fee contracted for was excessive, and that the demands of equity and good conscience would be satisfied by the reduction of the fee from $10,772 to $5,000. We cannot concur in this conclusion of the chancellor. The defendants occupied a fiduciary relationship towards the complainants, and have violated the confidence and trust reposed in them, and they are now in a court of chancery seeking compensation for services rendered in connection with the very matter about which they imposed upon their principals. It matters not that the services rendered by them were beneficial to the complainants, and, in this connection, it will be observed that the attack upon the contract was not grounded upon the excessiveness of the fee contracted for, but upon the ground that it had been obtained by fraud, and was void upon this account,

as well as upon the further ground that Hitt and Cain were otherwise compensated. We find no fault with the amount of the fee as fixed by the chancellor; and, in fact, in view of the substantial increase in mail pay rates obtained for the short line roads, much can be said in favor of the reasonableness of the fee contracted for. But this is not the point. The point is whether Cain and Hitt, who occupied a position of trust towards complainants, and who were being paid large salaries as officers of the Short Line Railway Association, are entitled to any compensation at all for their services rendered complainants under a contract which is held to have been void for their fraud and concealment of material facts; and, especially so, where they are shown to have agreed in advance to share the fees arising from said contract with Bird M. Robinson, who is not shown in this record to have been a lawyer, and whose only service consisted in inducing the complainants to enter into said void contract.

It matters not that the defendants brought their suit on their illegal contract in a court of law, and that the railroads were compelled to bring them into a court of chancery where their rights could be determined according to the principles of equity. It is one of the highest functions of a court of equity to grant relief against fraud; and the defendants, having been brought into a court of chancery, will have their rights determined just as if they had come into chancery in the first instance.

If the defendants had sued on their contract in equity in the first instance, they would not have been in a position to invoke against these complainants the maxim that "he who seeks equity must do equity;" and they will not be regarded as being in a better position by reason of having originally sued on their contract in the circuit court, and thereby made it necessary for the complainants to file their bill in equity to remove the litigation to that court.

The complainants having come into equity will, of course, be required to do equity; but we do not think that the principles of equity and good conscience require that they offer to pay the defendants the fair and reasonable value of their services; for, under the facts, we are unwilling to concede that the defendants are entitled in equity to any compensation for their services. Having reached the conclusion that their hands are unclean, and that they have violated the trust and confidence reposed in them by the complainants, it follows that they are entitled to no compensation, in equity, for their services; nor will the complainants, as the price of having the litigation transferred to the chancery court, be required to pay them the reasonable value of their services. The maxim relied upon only requires the complainants to do equity; to require them to pay defendants the fair and reasonable value

of the services rendered by Cain and Hitt would be requiring them to do more than equity.

In view of this conclusion, we do not deem it necessary to pass upon the complainants' assignment of error that Cain and Hitt were fully paid for their services by their salaries as officers of the Short Line Railway Association, although it appears that the petitions for half of the roads represented were filed at the instance of the Short Line Railway Association long before the void contracts for fees were obtained, and the briefs before the Interstate Commerce Commission were filed in behalf of the Short Line Railway Association, signed by Ben B. Cain, as general counsel for said association, and by Moultrie Hitt, attorney for Associated Short Lines, for short line roads.

We prefer to plant our decision upon the ground that the contract, having been obtained by fraud and concealment of material facts, is void; and that the defendants, having violated the trust and confidence reposed in them under the fiduciary relationship which existed between them and the railroads, are in equity and good conscience entitled to nothing for their services.

The complainants' first assignment of error will therefore be sustained, and the decree of the chancellor will be modified so as to deny the defendants any compensation whatever for their services. As thus modified, the decree of the chancellor will be affirmed, and the preliminary injunction will be made permanent.

The defendants and the sureties on their appeal bond will be taxed with the cost of the appeals.

Senter and Anderson, JJ., concur.