Argued February 9; reversed March 14, 1944

# DICKERSON ET AL. *v.* MURFIELD ET AL.

(147 P. (2d) 194)

Before BAILEY, Chief Justice, and KELLY, LUSK, BRAND and HAY, Associate Justices.

*McDannell Brown,* of Portland (Howard N. Dietrich, of Portland, on the brief) for appellants.

*Nicholas Jaureguy,* of Portland (John S. Coke and Cake, Jaureguy and Tooze, all of Portland, on the brief) for respondents.

KELLY, J.   The defendants, Ilo D. Murfield and Ernest Coy Murfield, are sons of the late Melissa Dickerson by her first husband.   The plaintiffs are her son and daughter by her second husband, Robert F. Dickerson.

On or about the 17th day of April, 1925, Robert F. Dickerson died intestate in the city of Portland, Multnomah County, Oregon.   He was survived by his widow, Melissa Dickerson, and his son and daughter, who are the plaintiffs and appellants herein.   His estate was duly admitted to probate in the circuit court of said county and state.

By deed dated December 14, 1938, Melissa Dickerson transferred the real property known as the home place in Portland, Multnomah County, Oregon, to Ilo D. Murfield and Ernest Coy Murfield, the defendants herein, which deed was recorded on December 1, 1939, in the deed records of Multnomah County, in book 524, photostatic page 401.

On August 3, 1941, Melissa Dickerson died testate in Multnomah County, Oregon.   On June 11, 1942, a petition for the probate of her will was filed by defendant Ilo D. Murfield.   Thereupon an order was made admitting said will to probate and appointing said Ilo D. Murfield executor.

Plaintiffs base their claim for the relief demanded upon an agreement alleged to have been made by Melissa Dickerson and the plaintiffs, which agree-

ment plaintiffs allege was known to and approved by defendants and pursuant to which plaintiffs turned over to their mother, Melissa Dickerson, all of their interest as heirs of Robert F. Dickerson in his estate, to-wit, the sum of $659.44, together with the additional sum of $190.15, allowed plaintiff H. M. Dickerson, as administrator's fees, and executed and delivered unto Melissa Dickerson deeds conveying to her all of their right, title and interest in and to the real property formerly owned by Robert F. Dickerson, title to which had vested in them as his heirs, in consideration for which their mother Melissa Dickerson agreed to hold all of said property, together with all her other property, and to provide by last will and testament for the division of said property at her death equally between all of her four children, the plaintiffs and defendants herein.

By stipulation, the record of three deeds executed by plaintiffs and their respective consorts as grantors to Melissa Dickerson was received in evidence. These deeds were executed on February 13, 1926, and recorded in the records of Multnomah County, Oregon, on February 26, 1926, in book 1044 at pages 306, 307 and 308 respectively, covering lots 7, 8 and 9 in block 1 and lots 7, 8, 9 and 10 in block 4, lots 4, 5 and 6 of block 4, and the east 15 feet of lot 17 in block 4, Chicago Centre, Multnomah County, Oregon.

The trial court made a finding that the agreement upon which plaintiffs rely was entered into as a result of, and for the purpose of complying with an agreement entered into between said Melissa Dickerson and Robert F. Dickerson during the latter's lifetime as follows: The said Melissa Dickerson and Robert F. Dickerson, during their joint lifetime agreed with

each other that upon the death of Robert F. Dickerson all property left by him should be held and used by said Melissa Dickerson during the term of her natural life, and that upon the death of Melissa Dickerson all of said property, together with all other property owned by Melissa Dickerson at the time of her death, should be divided equally among the plaintiffs herein and the individual defendants herein. Pursuant to the provisions of said agreement, and for the purpose of carrying the same into effect with respect to a portion of the property then owned by said Robert F. Dickerson, the said Robert F. Dickerson and Melissa Dickerson, his wife, made, executed and delivered to one Carl L. Stanley a certain deed of conveyance conveying unto said Carl L. Stanley certain valuable real property located in the county of Kiowa, State of Oklahoma and thereafter Carl L. Stanley and Maye Stanley, his wife, made, executed and delivered a certain deed conveying said real property to plaintiff, H. M. Dickerson. Coincidentally with the execution and delivery of said deed the plaintiff H. M. Dickerson, pursuant to the request and direction of his father, Robert F. Dickerson, and for the purpose of carrying said agreement into effect, executed a certain trust agreement wherein and whereby he acknowledged that the said real property was held by him in trust to pay the income therefrom to Melissa Dickerson during her lifetime and thereafter to convey one-fourth thereof to his sister Rue Fern McFarland, and one-fourth thereof to each of the individual defendants.

The trial court also made a finding that plaintiff H. M. Dickerson recognized and acknowledged the provisions of said trust during the entire lifetime of his mother, Melissa Dickerson, and for some considerable

time subsequent to her death, after which time plaintiff H. M. Dickerson repudiated said trust and refused to convey to each of the individual defendants one-fourth interest in said real property although demand by said defendants of said plaintiff has been made. The court further found that in said repudiation and refusal plaintiff Rue Fern McFarland joined with and encouraged the plaintiff H. M. Dickerson.

It is urged by plaintiffs that the trial court committed error in receiving the evidence upon which the foregoing findings are based.

The defendants seek to justify the action of the trial court upon the ground that such evidence disclosed that plaintiffs although seeking equity, were unwilling to do equity. The trial court as one of his conclusions of law stated:

"The conduct of the plaintiffs in repudiating the provisions of said trust agreement and of the agreement entered into between their parents during their lifetime is inequitable, and plaintiffs having refused to do equity are not entitled to any relief."

The question is thereby presented whether in the absence of any pleading, except a general denial and over the objection of the adverse party, testimony may be received in support of the claim that inequitable conduct of a party prevents such party from the relief sought in equity.

Plaintiffs cite 19 American Jurisprudence 322, section 466, and p. 327, section 473, and also 41 Ibid., p. 384, section 136.

Said section 466 is as follows:

"The obligations which a complainant will be required to perform as a condition to the obtaining

of the relief which he prays for are those arising out of the transaction which is the subject matter of litigation. A complainant will not be required to fulfill obligations which are founded on other contracts or transactions between the parties to the suit or between the complainant and a third person."

The same principle is stated in section 473, the concluding sentences of which are as follows:

"The question to be resolved is whether the complainant's wrongful conduct is connected with, or related to, the dispute between the complainant and the defendant, and not whether the complainant has been guilty of wrongdoing from which he has benefited.

"The courts apply the maxim not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice."

The portion of section 136 appearing on page 384 of Volume 41, American Jurisprudence, pertinent to the question before us, is as follows:

"Ordinarily an equitable defense must be specially and distinctly pleaded."

This is the rule applicable to actions at law, but the case at bar is a suit in equity.

■■ There is a distinction between the maxim that one seeking equity must do equity and the maxim that he who comes into equity must come with clean hands. We find this distinction clearly stated in Pomeroy's Equity Jurisprudence. In speaking of the maxim that he who seeks equity must do equity, Mr. Pomeroy says:

"The meaning is, that whatever be the nature of controversy between two definite parties, and whatever be the nature of the remedy demanded,

the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims, and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject-matter of the controversy. It says in effect, that the court will give the plaintiff the relief to which he is entitled, only upon condition that he has given, or consents to give, the defendant such corresponding rights as *he* also may be entitled to in respect of the subject-matter of the suit." Vol. 2, Pomeroy's Equity Jurisprudence, p. 52, sec. 385.

Mr. Pomeroy further says:

"In applying the maxim, He who seeks equity must do equity, as a general rule regulating the action of courts, it is necessarily assumed that different equitable rights have arisen from the same subject-matter or transaction, some in favor of the plaintiff and some of the defendant; and the maxim requires that the court should, as the price or condition of its enforcing the plaintiffs equity and conferring a remedy upon him, compel him to recognize, admit, and provide for the corresponding equity of the defendant, and to award to *him* also the proper relief. The maxim does not assume that the plaintiff *has done* anything unconscientious or inequitable; much less does it refuse to him all relief; on the contrary, it grants to him the remedy to which he is entitled, but upon condition that the defendants equitable rights are protected by means of the remedy to which *he* is entitled. On the other hand, the maxim * * *, He who comes into equity must come with clean hands, is much more efficient and restrictive in its operation. It assumes that the suitor asking the aid of the court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him *all* recognition and relief with reference to the subject-matter or transaction

in question. It says that whenever a party, who, as *actor* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine*; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." Ibid. pp. 91-92, sec. 397.

We think that the findings of the trial court, as above quoted, except in regard to the course taken by plaintiff, Rue Fern McFarland, are supported by a preponderance of the testimony.

We also think that the transfer of the Oklahoma property to plaintiff H. M. Dickerson in trust for his mother, his sister and the individual defendants herein is shown by the testimony now before us to be connected with, and related to the dispute between the plaintiffs and defendants. From the record now before us Dickerson's repudiation of and refusal to comply with the terms of that trust may be deemed in effect to be a refusal to do equity.

As to the conduct of plaintiff Rue Fern McFarland, it is true that she joined with her brother in instituting this suit. It is also true that no offer to do equity is made in plaintiffs' complaint herein and the cause of suit stated therein makes no references to the Oklahoma property, but as to Mrs. McFarland we think her course ill-advised, but not inequitable, for the reason that she had no control over the Oklahoma property, the retention of the title to which by her brother being of the essence of his inequitable conduct.

█ It is urged that the maxims to the effect that he who seeks equity must do equity and that he who comes into equity must come with clean hands are not

applicable unless pleaded by the party who seeks to invoke them. With this, we do not concur. *Ward v. Lovell,* 21 Tenn. App. 560, 113 S. W. 2d 759; *Duggan v. Platz,* 263 N. Y. 505, 189 N. E. 566; *East Tennessee and Western North Carolina Ry. Co. v. Robinson,* 19 Tenn. App. 265, 86 S. W. 2d 433; *Bell & Howell Co. v. Bliss,* 262 F. 131; *Brownley v. Peyser,* 69 App. D. C. 56, 98 F. 2d 337, 341; *Gest v. Gest,* 117 Conn. 289, 167 A. 909, 913, and cases there cited.

In *Carmichael v. Carmichael,* 106 Or. 198, 209, 211 P. 916, it is said that—

> "If collusion existed between the parties, the defendant does not come into court with clean hands."

Manifestly, if the maxim of unclean hands in order to be applied must be invoked in the pleadings, there would be a few instances in divorce procedure where the court would be able to apply the statutory rule which withholds relief when collusion is shown in the evidence. Without any direct reference to the maxim under discussion having been made in the pleadings, this court has applied the maxim in the following cases: *In re Kulka's Estate (Hansen, et al. v. Oregon Humane Soc.)* 142 Or. 104, 18 P. 2d 1036; *Josephson v. Josephson,* 132 Or. 581, 287 P. 80; *Billion v. Billion,* 124 Or. 415, 263 P. 397; *Page-Dressler Co. v. Meader, et al.,* 118 Or. 359, 244 P. 308; *Gardner v. Portland,* 95 Or. 378, 187 P. 306, and *Carmichael v. Carmichael,* supra.

In *Smith v. Barnes,* 129 Or. 138, 276 P. 1086, the court applied the maxim of unclean hands in withholding relief sought by plaintiff with references to one parcel of the real property in which together with

other property plaintiff sought to establish a resulting trust. In that case, Mr. Justice ROSSMAN, speaking for the court, said:

"We assume that it is unnecessary to cite authority that we were justified in investigating the charges of illegality even though the pleadings were silent upon that subject; this proof was received without objection."

■ In the case at bar, a general objection was interposed to all of the testimony concerning the Oklahoma property on the ground that it is immaterial and irrelevant. We think this objection was properly overruled by the trial court. The testimony taken over this objection clearly indicates that the agreement alleged in plaintiffs' complaint was only a continuance and amplification of the agreement made when the Oklahoma property was transferred to plaintiff H. M. Dickerson. Under general denial, such testimony was admissible as showing that the agreement pleaded was not the actual existing agreement between the parties.

Nearly a year elapsed after the death of Melissa Dickerson before a petition was filed seeking to have her will probated. The testimony before us discloses that the delay was caused by unsuccessful attempts of the individual parties to reconcile their differences. Plaintiff H. M. Dickerson sought to have a value of $4,000.00 placed on the Oklahoma property and a value of $5,000.00 placed upon the home property which their mother had transferred to defendants and he also claimed that an award should be made to plaintiffs of certain Jantzen corporate stock which was in their mother's name. Defendants proposed that the Oklahoma property should be considered equal in value to the home property and that an equal division of

all the property including the Jantzen stock and the Oklahoma real estate should be made.

The record now before us also clearly shows that by presenting the will above mentioned for probate the defendant Ilo D. Murfield assumed a position inconsistent with the testimony given by him in the trial court.

Said defendant's testimony discloses that the declaration of trust executed by Dickerson was known to the defendants, and their confirmation of and assent to the amplification of the original agreement aforesaid occurred long before the will of Melissa Dickerson was presented for probate. The terms of that will were inconsistent with the arrangement or agreement for the equal distribution of the property both in Portland and in Oklahoma. The presentation for probate of the will was inconsistent with the rights of the parties as disclosed by the present state of the record, and the retention of the title to the home place by defendants is also inconsistent therewith.

As stated in oral argument by both plaintiffs' and defendants' counsel, the dismissal of this suit would deprive plaintiff Rue Fern McFarland of any substantial participation in the distribution of the property involved herein although under the testimony she is entitled to one-fourth part thereof.

■■ The receipt by Rue Fern McFarland of a few used sheets and pillow cases and a few antiquated articles of furniture, upon which her initial had been placed by her mother, does not arise to the dignity of a waiver of her right to contest the will in suit, notwithstanding that such will gave those articles to her. The well known definition of waiver, as the intentional relinquishment of a known right, dissipates defendants'

contention that by taking those articles of little if any value Mrs. McFarland waived her right to insist upon the division of the property in suit in accordance with the agreement as found by the trial court, which finding is supported by the testimony before us.

To support a decree awarding to each party one-fourth of such property, there must be appropriate pleading as well as substantial evidence. There is no such pleading and no testimony upon which a determination as to the value of the Oklahoma property may be based.

■ While the fact that a party seeking equity does not come with clean hands deprives such party of the right to any relief, nevertheless, if such party purges himself of former unconscionable and wrongful conduct by adequate and effective renunciation and repudiation thereof, his right to relief will be restored. *McNair v. Benson*, 63 Or. 66, 76, 126 P. 20; 30 C. J. S. 489, Subject, Equity, section 98, citing: *Stockwell v. McAlvay*, 10 Cal. 2d 368, 74 P. 2d 504, cert. denied, 304 U. S. 547, 58 S. Ct. 1047, 82 L. Ed. 1520; *Canadian Club Beverage Co. v. Canadian Club Corporation*, 268 Mass. 561, 168 N. E. 106, 110; *Comstock v. Thompson*, 286 Pa. 457, 133 A. 638, 640; *Sherwood Co. v. Sherwood Distilling Co.* 177 Md. 455, 9 A. 2d 842, 846.

■ The dismissal of this cause would result in such a palpable and obvious injustice to plaintiff Rue Fern McFarland that we think an opportunity should be afforded to her to present her claim for relief severed, if necessary, from that of her present coplaintiff and that a like opportunity should be given to all or any of the other parties hereto to purge themselves of their inequitable or inconsistent course by reframing the pleadings in such a way that opportunity may be af-

forded for judicially appraising the Oklahoma property and also finally declaring the respective rights of the parties plaintiffs and defendants respectively.

From the record before us now, which, of course, is the same as that which was considered by the learned trial court, it appears that the contract or agreement, alleged in plaintiffs' complaint as existing between the parties hereto and their mother was but an amplification or modification of the earlier arrangement and agreement between Robert F. Dickerson and his wife Melissa Dickerson, assented to, ratified and confirmed by the parties hereto.

■ If upon retrial this record remains undisputed, a final decree based thereon not only will affect the rights of plaintiff Dickerson and the individual defendants in and to the respective properties in suit which were transferred to them respectively; but such decree will also affect the rights of Bruce R. McFarland as devisee of a portion of the real property in Multnomah County under the terms of the will of Melissa Dickerson which has been admitted to probate. This discloses a manifest defect of parties defendant and requires an order that said Bruce R. McFarland be made such a party to the end that he may have his day in court.

The decree of the circuit court is reversed and it is ordered that this cause be remanded for further proceedings not inconsistent herewith and that neither party hereto shall recover costs or disbursements on this appeal.